**Earl E. EDDY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–1067.

United States Court of Veterans Appeals.

April 3, 1996.

Gregory C. Burce, Milwaukee, WI, was on the brief for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II veteran Earl E. Eddy, appeals a September 15, 1994, decision by the Board of Veterans' Appeals (BVA or Board) denying a claim based on his assertion of clear and unmistakable error (CUE) in a September 19, 1946, Veterans' Administration (VA) (now Department of Veterans Affairs) regional office (RO) decision. Record (R.) at 8. For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The veteran served on active duty in the U.S. Army from May 1945 to August 1946. R. at 82. His April 1945 induction medical examination report indicated that his musculoskeletal system was normal. R. at 42. He was hospitalized for back pain on May 18, 1946, at the 42nd General Hospital in Japan, transferred to Letterman General Hospital in California on July 5, 1946, and transferred to Mayo General Hospital on July 10, 1946. R.

at 36–37, 39, 101, 103–04. A May 20, 1946, "History of the Present Illness" stated:

In 1942, [the veteran] was working on a grain wagon on a Wisconsin farm and after lifting some heavy grain bags he had onset of constant dull aching pains in the lower back—he has some pain all of the time on extensive walking or doing any heavy work. Since coming into the Army he has been able to do most duty [without] severe pain, but since January he has been driving a truck and he thinks his lower back has pained him more severely and he is unable to [do] duty [without] severe discomfort. He was x-rayed at the 161st Station Hospital in January but not hospitalized although several abnormalities were found. He was put on light duties but without relief of symptoms. Now comes to hospital for complete evaluation and disposition.

Imp. (1) Congenital abnormalities of vertebral column.

. . . .

*Vertebral Column*—Straight and [without] muscular spasm—moderate tenderness from [illegible] to lumbosacral joint—forward bending limited and lateral flexion painful—S[traight] L[eg] R[aising] tests negative. Vertebral rotation negative.

*Extremities*—negative[.]

R. at 115–16. A May 21, 1946, x-ray report stated:

There is a rotoscoliosis of the lumbar spine with the convexity to the right. There is asymmetry of the articular facets between L–4 and L–5 and there is some developmental variation from the normal of L–5 which I believe is of no clinical significance. The intervertebral spaces appear normal. The sacroiliac joint appears normal.

R. at 55. A June 3, 1946, clinical note stated: "Soldier unimproved during hospital stay—disposition Board saw soldier and [illegible] him for transfer to the Zone of the Interior and further medical care." R. at 56, 103.

A June 20, 1946, clinical record stated a diagnosis of: "Malformation, congenital—rotoscoliosis of the lumbar spine and asymmetry of the articular facets between L4 and L5 manifested by low back pain, chronic, moder-

ate severe, and aggravated by military service." R. at 45. The form also stated "L[ine] O[f] D[uty]: Yes (EPTS–Aggravated) Unimproved". *Ibid.* A June 20, 1946, hospital record stated: "Diag[nosis]: Rotoscoliosis lumbar spine[.] Assymetry [sic], articulating Facets spina bifida acculta [sic] 1st sacral L[ine] O[f] D[uty] No E[xisted] P[rior] T[o] S[ervice]." R. at 46. Handwritten below was the following notation: "Diagnosis: (1) Malformation, congenital—Rotoscoliosis of the lumbar spine and asymmetry of the articular facets between L4 & L5—manifested by low back pain, chronic, moderate severe, and aggravated by military service." *Ibid.* The block titled "Line of Duty" on the form had the notation "Yes (EPTS—aggravated)".

An undated Mayo General Hospital record (apparently made on or about July 12, 1946, given that it refers to "admission", and admission to Mayo General Hospital was on July 12, 1946, *see* R. at 126–27), stated:

Pertinent history, chief complaint, and condition on admission. In 1942, this patient appreciated the precipitous onset of constant dull aching pain in the low back while lifting heavy grain bags. Since that time he has had some degree of pain all the while, during extensive walking or heavy work. However, he has been able to tolerate his general Army duties without much personal distress. Since January 1946 he has been driving a truck and has appreciated an aggravation of the severity of pain since that time, being unable to do duty without severe discomfort. Roentgenographic studies of the low back was [sic] done at the 151st Station Hospital at which time a rotoscoliosis of the lumbar spine with convexity to the right was found with associated asymmetry of the articular facet between L–4 and L–5 and also concomitant developmental variations from the normal of L–5. Light duty did not give relief of symptoms. 15 May 46 the patient states that a bench fell on his back and for approximately two weeks following this he appreciated "numbness" on the lateral aspect of the right thigh. There is no other associated hypesthesia or hyperthesia. PHYSICAL EXAMINATION IS NEGATIVE EXCEPT FOR mild degree of low

sacrospinalis spasm bilaterally and tenderness over the spine of L–5.

Impression: (1) Malformation, lumbar spine, congenital, with rotoscoliosis and asymmetry of the articular facet between L–4 and L–5, manifested by low back pain, chronic, moderately severe, aggravated by military service. (2) ? Herniation of intervertebral disc.

Immediate Program: Refer to neurosurgery to [sic] re-evaluation of roentgenographic studies with check-up films of the lumbar spine.

R. at 51. This report was signed by "Albert E. Posthuma", who was identified as a first lieutenant in the medical corps. *Ibid.* A July 19, 1946, x-ray report stated: "Spine: There is a slight dextro-scoliosis of the lumbar spine; L5 is transitional in type and is slightly asymmetrical. There is a spina bifida occulta of S1." R. at 117.

An undated record, which refers to a July 12, 1946, admission to Mayo General Hospital and gives a patient history very similar to that reported in the July 12, 1946, record, stated:

Physical findings: Negative except for mild degree of low sacrospinalis spasms, bilaterally, with tenderness over spine of L–5. There is also associated limitation of flexion and rotation of the lumbar spine. Patient was admitted to Mayo GH 12 July 1946.

Clinical Course and Disposition: Check-up films of the lumbar spine have been taken for comparison with the previous films. Diagnosis: 1. Malformation, lumbar spine, congenital, with rotoscoliosis and asymmetry of the articular facet between L–4 and L–5.

2. ˙Low-back pain, chronic, moderately severe, aggravated by military service.

R. at 59–60. The name and title "A. E. POSTHUMA, 1st Lt., M[edical] C[orps]" appears at the bottom of the page. *Ibid.*

A July 18, 1946, "Opinion of consultant" by the Chief of Neurosurgery stated:

History and records reviewed. Patient dates the onset of symptomatology to 1942, at which time he strained his back while working on the farm and lifting wheat. Symptoms ·are not disabling but he continues to have intermittent low-back pain. Military service began in May 1945. He continued to have intermittent symptoms, increased by prolonged walking, vigorous exercises, lifting, and straining. His entire symptoms have been in the lower lumbar sacral region midline. Pain is of dull aching character and he, at no time, has had pain radiating into the gluteal region or lower extremities. In the first part of May, while stationed in Japan, a bench in which he was sitting turned over and the back struck him across the lower lumbar region, causing increase of pain. The following morning, he states that there was numbness of the entire right leg, beginning at the inguinal region, but no pain. No difficulty in walking or motor system and no difficulty on the left. In two weeks sensory symptoms had completely subsided. Sensory manifestations have not been localized but began at the level of the thigh mentioned. No sphincter difficulties. When patient was in the hospital and in˙ ordinary activities, he has no symptoms whatever, but it is only when doing more strenuous activities as mentioned that back pain develops.

*PHYSICAL EXAMINATION:*

He has perfect movement of the spine in all directions without complaint of pain. No abnormalities to palpation or percussion. No atrophies made out in the lower extremities. Cremasteric reflexes are active. Motor power is good and equal. Deep reflexes brisk and equal. Straight leg raising not painful. No abnormality of sensation can be detected.

*IMPRESSION:*

I can find no evidence of any disease of the nervous system which is responsible for symptomatology. Neurosurgical clearance is given.

R. at 61. A July 26, 1946, "Physical Profile Serial" signed by "medical officer" A.E. Posthuma listed "Malformation lumbar spine, congenital" under "Defects Which Require Special Consideration in Assignment"; "nothing but very light duty" under "Individual is Unfit for Following Types of Duty"; "permanent" was checked under "Limitations

Mentioned Above Are"; and "to be separated under Circular #391" was entered under "Remarks". R. at 30.

An August 8, 1946, clinical record noted: "Malformation, lumbar spine, congenital, with rotoscoliosis and asymetry [sic] of the articular facet between L–4 and L–5, manifested by low back pain, chronic moderately severe, E[xisted] P[rior] T[o] S[ervice], aggravated by military service. (Transfer diagnosis concurred in.)" R. at 29. An August 8, 1946, hospital record signed by A.E. Posthuma reported a "final diagnosis" of:

1. Malformation, lumbar spine, congenital, with rotoscoliosis and asymmetry of the articular facet between L–4 and L–5

2. Low back pain, chronic, moderately severe, aggravated by military service.

R. at 25. The report noted that his "condition on completion of case" was "unimproved". *Ibid.* An August 10, 1946, "Disposition of Patient" card listed a diagnosis of "1. Malformation, lumbar spine, congenital. 2. Low back pain, chronic, moderately severe." R. at 35. A block titled "Line of Duty" was checked "yes", and "aggravated by service" was typed in. *Ibid.* The veteran's August 10, 1946, separation medical examination report indicated "none" for musculoskeletal defects, noted an "[i]njured back" in May 1946, and indicated (by "yes" or "no" answers) the following: That the injury did not exist prior to service; was incurred in military service and in the line of duty; was a "present physical defect"; was not aggravated in service; and would not result in disability. R. at 141.

In August 1946, shortly after his separation from service, the veteran applied to VA for disability compensation for a back condition. R. at 143. Following an initial September 5, 1946, denial based on incomplete records, a September 19, 1946, VARO decision noted that "[a]dditional records [were] received and reviewed" and concluded: "BACK INJURY, AGGRAVATED: Not found on last examination in service." R. at 24, 148, 150–51. A September 24, 1946, letter to the veteran from the RO stated the RO's analysis:

Kindly be informed that under date of September 19, 1946, all the evidence in your claims file including additional service records, recently received, was carefully considered by this office. It was the determination of the Rating Agency that no new findings were shown upon which to change your current rating. The disability diagnosed back injury, aggravated, was not found on last examination in service. The records indicate, however, that you received treatment for this condition while in service but that no residuals were noted at time of discharge. If you are of the opinion that you have a meritorious claim, you may submit evidence in support thereof.

R. at 154. A February 8, 1947, RO decision confirmed the denial. R. at 156.

In March 1991, the veteran filed with the RO a statement, with medical records attached, requesting service connection for his back condition. R. at 97. The records submitted were duplicates of the records received by the RO in 1946 and 1947. R. at 98–136. The RO requested and received private medical records of back treatment in 1978 (R. at 172), and the veteran submitted a letter from a private doctor stating that he had treated the veteran since 1979 for "chronic intractable back pain with recurring acute attacks" (R. at 188). In May 1991, the RO refused to reopen the claim because the service medical records had been previously considered and the private medical records indicated treatment more than 30 years after service. R. at 179, 191.

The veteran appealed to the Board, and the September 15, 1994, BVA decision here on appeal granted the claim for service connection of a lower back disorder, effective as of the date of the reopened claim, and denied a claim of CUE in the September 19, 1946, RO decision. The Board stated that, although the veteran's back condition had worsened during service, the increase in disability was temporary as shown by the July 1946 examination report. R. at 13. The Board acknowledged that the September 19, 1946, RO decision had "misstated the findings of back defect at separation", but concluded that "had the error not been made"

the outcome would not have been "manifestly different". *Ibid.*

## II. Analysis

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1995). A claim of CUE is a collateral attack on a final RO decision. *See Smith (William) v. Brown,* 35 F.3d 1516, 1521 (Fed.Cir.1994); *Duran v. Brown,* 7 Vet. App. 216, 223–24 (1994).

In *Russell v. Principi,* the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE] is the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

*Russell,* 3 Vet.App. 310, 313 (1992) (en banc). As to the "statutory or regulatory provisions extant" in 1946, the law then applicable to a claim of aggravation of an injury or disease in service was essentially the same as it is now. *Compare* Vet. Reg. No. 1(a), Part I, para. I(d), Ex. Ord. No. 6156 (June 6, 1933), *with* 38 U.S.C. § 1153; 38 C.F.R. § 3.306(a) (1995). Basically, it must be found that a preexisting injury or disease, here the veteran's back condition, increased in disability during active service and, if so, that condition is held to be aggravated by service unless there is a specific finding that the increase in disability was due to the natural progress of the disease. *Ibid; see Doran v. Brown,* 6 Vet.App. 283, 286 (1994); *Hunt v. Derwinski,* 1 Vet.App. 292, 293 (1991).

■ For a claim of CUE to be reasonably raised, the claimant must provide some degree of specificity as to what the alleged error is, and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error". *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993). On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Glynn v. Brown,* 6 Vet.App. 523, 530–31 (1994); *Damrel v. Brown,* 6 Vet.App. 242, 246 (1994); *Russell,* 3 Vet.App. at 315.

■ Most importantly in terms of the Court's decision in this case, "[i]n order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Russell,* 3 Vet.App. at 313. "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior ... decision." *Id.* at 314; *see also Luallen v. Brown,* 8 Vet.App. 92, 95 (1995) ("the appellant is actually asserting disagreement with how the RO evaluated the facts before it, an allegation which is inadequate to raise a CUE claim").

■ The veteran asserts CUE in the September 19, 1946, RO decision in that there was a "great array of medical reports and records ... that state explicitly that the veteran had a disorder of the back that was 'aggravated by military service'", and "no factual basis at all" to the contrary. Brief (Br.) at 9–10. He argues that the August 1946 separation medical examination report stated that his back injury had been "incurred in line of duty"; thus, according to the veteran, "[t]he report of the separation exam contains an express indication that the veteran sustained a back injury while in the service, and that physical defects related to the injury were present at the time of the examination". *Ibid.* He asserts that the RO's interpretation of the separation exami-

nation report as not showing aggravation of a back injury was an "obvious misreading" and the rationale for its decision was "patently false". Br. at 10.

Had the RO in 1946 indeed made a materially incorrect characterization of the separation examination report (for example, by stating that the report had not recorded an in-service injury), then there might have been a viable CUE claim in this case if the appellant were also able to demonstrate that correction of the error would "manifestly" have changed the outcome, *Fugo, supra. See Russell*, 3 Vet.App. at 319 (facts of appellant's case showed that RO had been "undebatably incorrect" that "service records do not indicate defective hearing while on active duty"). However, the appellant has made no such showing.

In essence, the appellant's position is that the RO misinterpreted the evidence of record. The appellant has made a strong case that there was another, perhaps more persuasive, view of the evidence that should have led the RO to award service connection in 1946 for aggravation of a preexisting back condition. However, any error by the RO in not making such an award would not fit the *Russell* prescription for CUE: [T]hat "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied". *Russell*, 3 Vet.App. at 313. The appellant's position in this appeal amounts to no more than "a disagreement as to how the facts were weighed or evaluated" *(ibid.)*; no matter how compelling, such a contention cannot form the basis for a claim of CUE. *See Luallen, supra*. Hence, the Court cannot possibly conclude that the Board's denial of the appellant's CUE claim was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 38 U.S.C. § 7261(a)(3)(A). *See Glynn*, 6 Vet.App. at 531.

Nor is this a case where the RO denied the very existence of an in-service medical report, as was the case in *Russell, supra. See also Glynn, supra* (CUE not found where prior decision "did not deny the existence of an in-service injury" but denied only that

"any injury appellant may have sustained during service did not aggravate his preexisting condition"). Neither is it, as the appellant asserts, a case where there was "no factual basis" for the RO's denial. Even if this were a viable basis for a CUE claim, *cf. Bentley v. Derwinski*, 1 Vet.App. 28, 30–31 (1990) (undisputed facts of record at time of earlier adjudication required CUE-based award of higher disability rating retroactive to date of prior adjudication), the above discussion illustrates that the appellant's assertion is incorrect.

■ The appellant also argues that the Board committed error in relying on the neurosurgeon's July 18, 1946, examination report as providing an adequate basis for the RO's September 1946 decision when the RO itself never had considered that report. However, the mere fact that the RO did not discuss that report in its decision or followup letter to the veteran does not make manifest that it did not consider it. Not until February 1990 were ROs required to include in their decisions "a summary of the evidence considered". 38 U.S.C. § 5104(b); *see* Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115, 103 Stat.2062, 2066 (1989). Hence, silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record.

■ Finally, the appellant argues that the case should be remanded to the Board because its statement of reasons or bases for its denial of CUE was not adequate under 38 U.S.C. § 7104(d)(1). *See Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this statutory requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995); *Gabrielson v. Brown*, 7 Vet.App. 36, 39–40 (1994); *Abernathy v. Principi*, 3 Vet.App. 461, 465 (1992); *Gilbert, supra*. There was indeed much evidence that the veteran's preexisting back

condition was aggravated during the time when the veteran was hospitalized in service *(see* R. at 25, 29, 35, 45, 51, 59, 113), and the Board did indeed fail to discuss, let alone analyze, much of it. However, as concluded above, the appellant's claim is basically a simple disagreement with how the RO weighed the evidence and, thus, any inadequacy in the Board's statement of the reasons or bases for its decision on that claim would be nonprejudicial error because a CUE claim could not have been granted on any of the theories advanced by the appellant. *See Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc) (where Board mistakenly concludes that claim that is not well grounded was well grounded and proceeds to deny claim on merits, such denial is not prejudicial to appellant and is affirmed on appeal to this Court).

### III. Conclusion

Upon consideration of the record and the briefs of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal under 38 C.F.R. § 3.105(a) and the analysis in *Gilbert, supra.* Therefore, the Court affirms the September 15, 1994, BVA decision.

AFFIRMED.