Gerald L. GROVER, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 97–1048.

United States Court of Veterans Appeals.

Jan. 5, 1999.

Michele N. Siekerka was on the briefs for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Darryl A. Joe were on the brief for the appellee.

Before NEBEKER, Chief Judge, and IVERS and GREENE, Judges.

IVERS, Judge:

The veteran appeals from a February 28, 1997, Board of Veterans' Appeals (BVA or Board) decision which determined that new and material evidence had been submitted to reopen a claim for service connection for a right foot injury and granted service connection, but determined that there was no clear and unmistakable error (CUE) in the May 1986 rating decision that denied service connection for the veteran's right foot injury. The veteran and the Secretary have filed substantive briefs. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons stated below, the Court will affirm the Board's decision.

## I.  FACTS

The veteran served on active duty in the U.S. Air Force from October 1975 to April 1976. Record (R.) at 16. There was no indication in his August 20, 1975, entrance examination of any physical abnormality, and specifically, no evidence of a foot disability beyond asymptomatic hyperkeratosis on both heels. "Hyperkeratosis" is defined as "hypertrophy of the corneous layer of the skin, or any disease characterized by it." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 795 (28th ed.1994) [hereinafter DORLAND'S]. As a result of his entrance examination, the veteran was characterized as fit for world-wide duty. R. at 29. During that same month, the veteran was examined for a right toe injury incurred in basic training (R. at 32), and although the X-ray failed to reveal any evidence that the toe was fractured (Id.), he was granted physical restrictions and a temporary waiver from duties. R. at 25. Following further complaints of pain in the same toe, the veteran was again evaluated, in February 1976, at the dispensary of a different service base, and was noted as having a history of a fractured toe during basic training. R. at 35. No separation medical examination is of record.

In a December 1985 physical examination, a VA examiner indicated tenderness and a limited range of motion at the metatarsal phalangeal joint of the great toe. R. at 56.

The diagnosis was residuals of an injury to the veteran's right foot. R. at 57. However, an X-ray evaluation of the right foot at that time showed only slight spurring on the plantar surface of the os calcis (R. at 59), which is the "irregular quadrangular bone at the back of the tarsus." DORLAND'S at 1195, 245.

In a May 1986 rating decision, the RO denied the veteran service connection for residuals of an injury to his right foot and indicated that there was "insufficient evidence to relate any of the veteran's conditions to his current disability." (R. at 60). The decision further stated that "the condition noted in service appeared to be acute and transitory as seen by the release to world-wide duty" following the veteran's basic training. *Id.* However, in actuality, he was found fit for world wide duty during his entrance examination, which was prior to basic training, and prior to the injury. The May 1986 rating decision also referenced an orthopedic examination record which showed degenerative arthritis of the left knee, bilateral pes planus, and a history of a ruptured Achilles tendon. R. at 59. This record belonged to another veteran and had erroneously been included with Mr. Grover's file. *Id.* The veteran did not appeal and the decision became final.

During a hearing at the RO in December 1989, the veteran testified that he had fractured his foot during basic training in 1975. R. at 105–06. He indicated that he did not seek civilian medical treatment because he could not afford it, nor did he understand the procedures for obtaining such treatment. R. at 108. The veteran testified again in September 1990. R. at 150–65. Although the veteran asserted his belief that his claim was previously denied due to VA's misunderstanding of which foot was injured (R. at 154), X-rays taken at Somerset Medical Center in August 1991 showed some change of the veteran's right first toe, but failed to reveal any evidence of fracture. The X-rays showed the veteran's right foot to be normal. R. at 12.

The veteran appealed to the Court in 1992, and in May 1993 the parties agreed to a joint motion for remand, directing, in part, that the Board determine whether CUE occurred in the RO's May 1986 rating decision. R. at 225. Consequently, the Board remanded this issue to the RO where the veteran's CUE claim was denied in a September 1994 rating decision. R. at 233–37.

In January 1996, the veteran underwent a VA joints examination (R. at 376) that took note of his history of tripping and hurting his right first toe during basic training. R. at 373. The examiner diagnosed the veteran with moderate degenerative joint disease of the right first toe and indicated a possible correlation between the veteran's disability and the injury suffered during service. *Id.* As a result, in a February 28, 1996, decision, the Board determined that new and material evidence had been submitted to reopen the veteran's claim, and granted the veteran service connection for his right foot injury. R. at 4. However, the Board concluded that there was no CUE in the May 1986 rating decision that denied the veteran's claim for the same right foot injury. *Id.* The Board observed that the December 1985 VA examination showed that the veteran had residuals of an in-service injury, but did not identify any particular disability. R. at 13. Contrarily, the combination of subsequent medical evidence, the veteran's personal testimony, and the February 1996 VA examination, provided a particular diagnosis for the right foot injury previously described by the veteran. Therefore, the Board granted service connection for degenerative joint disease of the right first toe, effective February 1996. *Id.* In his brief, the veteran contended that CUE had occurred in the May 1986 rating decision, and that service connection should be considered effective at that time. Appellant's Brief at 9.

## II. ANALYSIS

RO decisions concerning claims for benefits are subject to revision on the grounds of CUE. *See* 38 U.S.C. § 5109A(a); 38 C.F.R. § 3.105(a). In *Fugo v. Brown,* 6 Vet.App. 40 (1993), the Court defined CUE as:

[T]he kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* differ-

ent but for the error. Thus even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable.... If a claimant-appellant wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and ... persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error. It must be remembered that there is a presumption of validity to otherwise final decisions, and where such decisions are collaterally attacked ... the presumption is even stronger.

*Id.* at 43–44 (emphasis in original).

█ In order to find CUE it must be determined (1) that either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) that an error occurred based on the record and the law that existed at the time the decision was made, and (3) that, had the error not been made, the outcome would have been manifestly different. *See Damrel v. Brown,* 6 Vet.App. 242, 245 (1994); *Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992)(en banc). When reviewing a decision by the Board as to whether an RO decision was a result of CUE, this Court must determine whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" (38 U.S.C. § 7261(a)(3)(A)), and whether the Board stated adequate reasons or bases for its conclusions (38 U.S.C. § 7104(d)(1)). *See Eddy v. Brown,* 9 Vet.App. 52, 57(1996); *Russell,* 3 Vet.App. at 315.

### A. Incorrect Information

█ In this case, the existence of CUE cannot be found in the RO's May 1986 decision. All relevant facts that existed at the time of the rating decision were before the RO, and it made its decision based upon those facts. R. at 59–60. The RO reviewed in-service medical records that indicated an injury to the veteran's right foot, but an August 1975 X-ray evaluation revealed no evidence of a fracture. R. at 32. While those service medical records did confirm the occurrence of an injury, they also confirmed that the veteran was merely assigned a temporary waiver of duties and was excused from running for a period of ten days. R. at 60. Thus, based upon "all evidence and material of record" (38 U.S.C. § 7104(a)), the RO, in its May 1986 rating decision, determined that the applicable evidence showed the veteran's injury to be acute and transitory and that the preponderance of the evidence was against the claim. R. at 59–60. The Board agreed with that decision and gave adequate reasons or bases for this conclusion, and thus, its decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3)(A).

█ Due to the lack of service medical evidence indicating a fracture suffered during service, any post-service medical reference to a fractured foot suffered by the veteran in 1975, without a review of his service medical records, cannot be considered competent medical evidence. *LeShore v. Brown,* 8 Vet.App. 406 (1995). In *LeShore,* the Court determined that "evidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that examiner, does not constitute 'competent medical evidence.'" *Id.* at 409. Thus, the December 1985 VA examination that indicated a fracture in service, and thereby, diagnosed the veteran with residuals of a right foot injury, lacks reliability. During that examination, the veteran offered a history of a fractured right foot during service. Thus, the veteran, in reciting the history of his injury, offered his lay opinion regarding the etiology of his disability. Generally, lay testimony cannot provide such medical evidence because lay persons lack the competence to offer medical opinions. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). However, in some instances, lay evidence suffices to demonstrate that a current disability relates to a disability suffered during service. The standard is whether a competent medical opinion is required to identify whether a present disability is related to a service-connected disability,

or whether such a determination can be made by the observation of a lay person. *Savage v. Gober*, 10 Vet.App. 488, 495 (1997). In this case, a fracture is not the kind of disability observable by a lay person.

■ While the veteran has alleged CUE in the RO's reliance on the notation in the service medical records that he was deemed fit for world-wide duty after, rather than before, basic training, he failed to demonstrate persuasively that "the result would have been manifestly different but for the alleged error." *Fugo, supra.* Due to the acute and transitory nature of the veteran's injury, and the lack of the evidence demonstrating that the veteran's condition in May 1986 was related to service, the Board correctly concluded that, although it was error to rely on this information, such error did not affect the outcome of the veteran's claim significantly enough to rise to the level of CUE. Thus, such error was harmless. *See Russell, supra.* Furthermore, the Board conceded that the veteran's file did, in fact, contain the medical information of another veteran (R. at 9); however, the other veteran's orthopedic examination record showed degenerative arthritis of the left knee, bilateral pes planus, and a history of a ruptured Achilles tendon. R. at 59. None of these conditions are relevant to Mr. Grover's claimed right first toe disability. In fact, all applicable evidence regarding Mr. Grover's claim was before the adjudicator, and a decision was made based on that correct information. There is no evidence indicating that the RO relied upon the medical information of another veteran when it made its decision. Thus, the Board correctly concluded that the rating decision would have been unchanged had the incorrect information not existed.

### B.   Continuity of Symptomatology

■ The veteran claimed that the RO failed to apply the provisions of section 3.303(b) of title 38, Code of Federal Regulations, and consider his claim under the theory of continuity of symptomatology. Appellant's Brief at 9. Section 3.303(b) states, "For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word 'Chronic.'" Thus, sufficient evidence is required to show continuity of symptomatology only if there is no evidence in service demonstrating that his disability was chronic. *Id.*

■ The RO determined that the veteran had submitted only medical evidence of an injury in service that was "acute and transitory," and that the evidence did not support a finding that identified a disability that was chronic. R. at 59–60; *See Savage*, 10 Vet. App. at 496 (merits determination as to continuity of symptomatology is a factual determination reviewable under a clear-error standard). As a result, sufficient evidence is required to demonstrate continuity of symptomatology under section 3.303(b). The only post-service medical evidence of record was a December 1985 VA physical examination, during which the veteran claimed to have been suffering from a "fractured" toe since basic training; however, an X-ray evaluation established that no such fracture had resulted. R. at 54–57. Thus, the RO determined that, due to the nature of the veteran's injury in service, and his failure to seek a medical opinion regarding his disability for over 10 years, there is insufficient evidence to satisfy the requirements of section 3.303(b). The Board agreed and properly provided a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990); *See also Francisco v. Brown*, 7 Vet.App. 55, 57–58 (1994).

### III.   CONCLUSION

Upon consideration of the veteran's brief, the Secretary's brief, and the record, the Court holds that CUE did not exist in the RO's May 1986 rating decision that denied service connection for the veteran's right foot injury. The Board's affirmance of the RO's decision contained adequate reasons or bases and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with the law. *See Russell, supra.* For the reasons stated in this opinion, the Board's February 28, 1997, decision is AFFIRMED.