# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-1409

Leroy B. MacKlem, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided August 10, 2010)

*Michael R. Viterna*, of Ypsilanti, Michigan, was on the brief for the appellant.

*Michael A. Carr*, with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. SCHOELEN, *Judge*, filed a concurring opinion.

LANCE, *Judge*: The appellant, Leroy B. MacKlem, through counsel, appeals a March 27, 2008, decision of the Board of Veterans' Appeals (Board) that determined that a March 1950 rating decision, which severed the appellant's service-connected benefits on the basis of clear and unmistakable error (CUE) in the original March 1944 rating decision awarding service connection for arthritis of the left hip, did not contain CUE. Record (R.) at 3-27. In a single-judge memorandum decision issued on November 3, 2009, the Court affirmed the Board decision. On November 24, 2009, the appellant moved for reconsideration or, in the alternative, consideration by a panel. On February 4, 2010, the panel ordered the parties to submit supplemental memoranda. After review of these memoranda, the parties' other briefs, and the record, the Court's November 3, 2009, memorandum decision is withdrawn and this opinion is issued in its place. For the reasons

set forth below, the Court will reverse the Board decision and remand the matter for further proceedings consistent with this decision.

## I. FACTS

The appellant served on active duty for approximately nine months, from February 1943 to December 1943. R. at 38. He received the European-African-Middle Eastern Campaign Medal and Bronze Star Attachment. *Id.* The record reflects that he arrived in the European Theater in June 1943 and returned home in November 1943, having participated in the "Occupation of Sicily." *Id.*

The appellant's induction examination report indicates that he had dislocated his hip in 1941, that there was "no recurrence," and that the condition was "nonsymptomatic." R. at 396-99. An October 1943 x-ray report of the appellant's pelvis notes an impression of "aseptic necrosis."[1] R. at 389. An October 1943 Medical Board report diagnosed the appellant's symptoms as "[n]ecrosis, aseptic, severe, head of left femur, caused by previous dislocation in December 1941." R. at 384. The report concluded that the disability was not incurred in the line of duty and had existed prior to the appellant's induction. *Id.* A November 1943 Brief Clinical Record noted a final diagnosis of "[n]ecrosis, aseptic, severe, head of left femur, caused by previous dislocation in December 1941." R. at 372. The report reiterated that the disability existed prior to service and was not incurred in the line of duty. *Id.* A December 1943 "Final Summary" detailing medical examinations at the Billings General Hospital, Fort Harrison, Indiana, indicates that, prior to enlistment, the appellant "was involved in an automobile accident . . . [and] suffered a dislocation of the left hip." R. at 353. Noting that the results revealed in prior x-rays were "characteristic of aseptic necrosis," the physician stated that, "[i]n the opinion of the Chief of the Orthopedic Section, the aseptic necrosis . . . is secondary to a dislocated hip in civilian life, 1941." *Id.*

The appellant's Certificate of Disability for Discharge reveals that he was recommended for discharge due to "[n]ecrosis, aseptic, severe, head of left femur, secondary to dislocation, left hip, accidentally incurred while a civilian, when he was involved in an automobile accident, 24 Dec.

---

[1] "Aseptic necrosis" is defined as "increasing sclerosis and cystic changes in the head of the femur which sometimes follows traumatic dislocation of the hip." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1254 (31st ed. 2007) [hereinafter DORLAND'S].

1941," indicating that, "[s]ince the injury on 24 Dec. 1941, [the appellant] has had intermittent pain in [the] left hip."  R. at 419-420, 419.

A March 1944 rating decision awarded service connection for arthritis, secondary to the appellant's left hip condition, and assigned a 20% disability rating, effective December 1943.  R. at 331.

In October 1944, the appellant underwent hip surgery at the Marine Hospital in Detroit, Michigan, and remained hospitalized until January 1946.  R. at 182-86, 188.  A "special orthopedic examination" report reveals a diagnosis of osteochondritis,[2] or Perthe's disease, of the left hip, with severe limitation of motion.  R. at 188; *see* R. at 182-96, 193-94.

A February 1945 physical examination report indicates a diagnosis of "[o]steochondritis, left femur (Perthe[']s hip)."  R. at 316; *see* R. at 310-316.  A March 1945 rating sheet stated that the appellant's disability was osteochondritis (Perthe's disease) of the left hip, noting that it had been formerly diagnosed as arthritis of the left hip.  R. at 306-07.

A July 1946 physical examination indicates that the appellant had dislocated his hip prior to service but that he "[w]as all right until he went into the Army in February 1943," where he experienced "[s]ome pain in [his] hip during basic training."  R. at 262; *see* R. at 262-70.  The report notes that the appellant reported having pain in his hip while he served in North Africa and Sicily and that the Army called it "necrosis," but that the "Veteran's Bureau diagnosed it as arthritis."  R. at 262.  A February 1946 decision increased the appellant's disability rating to 70%, effective February 1946.  R. at 413.

A 1949 report of physical examination noted that "[i]n March 1943, [the appellant] went on sick call for pain in [the] left hip and reported off and on . . . finally it became so bad [that] he reported to the hospital in Sicily and was sent to the States, arriving [at] Billings General Hospital [on] November 28, 1943."  R. at 186; *see* R. at182-96.

In January 1950, VA proposed severance of the appellant's service connection award on the basis of CUE "as shown by the evidence of record at the time of the prior decisions."  R. at 180-81.  VA notified the appellant of the proposal.  R. at 171-73.  A March 1950 rating decision severed

---

[2] "Osteochondritis" is defined as "inflammation of both bone and cartilage."  DORLAND'S at 1366.

service connection for the appellant's osteochondritis of the left femur on the basis of CUE. R. at 162-65, 63. The decision indicates that the appellant's induction examination reported that he had a hip dislocation as a civilian in 1941 and that the condition was nonsymptomatic. R. at 163. Noting that the appellant's hip condition existed prior to service, the decision states that, "[a]pproximately one month after reporting to active duty the veteran went on sick call, complaining of hip pain," and that, in October 1943, he was admitted to the 33rd General Hospital with a "diagnosis of necrosis, aseptic, severe, head of left femur, caused by dislocation, December 1941." *Id.* After reviewing the medical evidence from 1944 to 1949, the rating board concluded that there was "no evidence during service of any abrupt or sudden patholo[gic] developments or trauma which could be considered a positive factor [of] aggravation of the condition which was incurred prior to service." R. at 164. The rating board concluded that "the increase in the level of disability during service was due solely to [the] natural progress to be expected in the condition which was incurred [in] civilian life, and which was noted on induction." *Id.*

In September 2006, 56 years after severance, the appellant submitted a letter arguing that the March 1950 rating decision severing his benefits contained CUE, asserting that the decision was based only on a "difference of opinion, which in itself does not meet the criteria for severance." R. at 97. In January 2007, the Detroit, Michigan, regional office (RO) issued a rating decision finding that the March 1950 decision did not contain CUE. R. at 94-96. The appellant submitted a Notice of Disagreement (NOD). R. at 88.

The appellant thereafter received an undated letter from the Detroit RO indicating that it had "made a decision on your appeal received on January 20, 2007." R. at 60. The letter included a schedule detailing the past-due payments to which the appellant would be entitled. R. at 60-66. This undated letter apparently referred to a decision review officer (DRO) decision, dated June 1, 2007, indicating that the appellant's "[b]enefits sought on appeal are granted . . . [and] reinstated April 1, 1950." R. at 71; *see* R. at 71-78. That decision states that "the severance of service [connection] is held to be a clear and unmistakable error." R. at 75.

A July 2007 letter to the director of the Detroit RO from the director of VA's Compensation and Pension Service (C&P) indicates that the aforementioned June 2007 DRO decision was merely a proposal. R. at 58-59. The letter, entitled "Administrative Review—Retroactive Award Over

4

Eight Years," notes that the June 1, 2007, decision, "if promulgated, [would] reinstate entitlement to compensation payments that were severed by a rating decision dated March 29, 1950." R. at 58. The letter explains that the March 1944 rating decision "was in error for granting service[]connection for arthritis, secondary to dislocation of the left hip, . . . [because t]he evidence of record did not show aggravation." *Id.* Noting that the proposed rating decision "should not be promulgated," the letter states that "available evidence clearly indicated that this condition existed prior to service," and that the severance "decision was correct." R. at 58-59.

In August 2007, VA issued the appellant a Statement of the Case (SOC) continuing its finding that the severance decision did not contain CUE. R. at 44-57. The appellant perfected an appeal of the decision. R. at 41-42.

In the decision on appeal, the Board determined that there was no CUE in the March 1950 decision because there was a plausible basis in the record for the March 1950 decision finding CUE in the March 1944 decision. R. at 1-25.

## II. ARGUMENTS

In his initial brief, the appellant argues that the Board erred in finding "that the March 1950 rating decision was not the product of CUE." Appellant's Brief (Br.) at 7. In his motion for reconsideration or a panel decision, however, the appellant does not argue that the 1950 RO decision contained CUE. Instead, he contends that the August 2007 SOC was void, asserting that, "but for the extraordinary review process undertaken in this case, even if the June 2007 DRO decision was a mere proposal, it was on the path to promulgation." Appellant's Motion for Reconsideration (Mot.) at 4-5. The appellant further explains his position in his supplemental brief in response to the Court's February 4, 2010, order, stating that

> the extraordinary award process has been found by the [U.S. Court of Appeals for the Federal Circuit (Federal Circuit)] to be invalid[,] and that finding, by necessity, affords the August 2007 SOC no force or legal effect . . . [; b]ut for the extraordinary review process implemented improperly by VA, this appeal would not have occurred as the benefit sought had been granted in the June 2007 DRO decision and there was no legal basis to further pursue a full grant of benefits.

Appellant's Supplemental (Supp.) Br. at 5-6.

5

In his supplemental brief, the Secretary argues that the August 2007 SOC is not void. Secretary's Supp. Br. at 2. He contends that the appellant suffered no violation of his due process rights because, "[e]ven though he could not submit argument to the C&P Service, he reviewed the DRO's draft, non-promulgated decision and submitted argument [and] was later afforded the opportunity for a hearing at the RO and . . . the Board." *Id.* In essence, the Secretary argues that, although VA erred in providing the appellant with a draft decision, any such error was harmless because the appellant enjoyed de novo review by the Board, "without any deference accorded to any prior legal or factual analysis" undertaken by VA. *Id.* at 7-8.

## III. ANALYSIS

### A. Appellant's Arguments Regarding the Board Decision

#### 1. Clear and Unmistakable Error

##### a. Legal Framework

At the time of the March 1950 decision, the regulation governing severance, Veterans Regulation No. 2(a), pt. II, par. III; Department of Veterans Affairs Regulation 1009; effective January 25, 1936, to December 31, 1957, which was the precursor of 38 C.F.R. § 3.105 (2010), provided that VA could not reverse or amend a rating decision in the absence of new and material evidence but that a decision could be reversed or amended where such reversal or amendment was obviously warranted by CUE shown by the evidence in the file at the time that the prior decision was rendered. *See* VA Regulation 1009(A), (D), as in effect in 1950.

A VA decision that has become final generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. §§ 5109A, 7111; 38 C.F.R. § 3.105(a); *see also* 38 U.S.C. §§ 5108, 7105(c). A claim of CUE is a collateral attack on a final decision by an RO or the Board. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000). CUE claims as to RO decisions are permitted by 38 U.S.C. § 5109A; 38 U.S.C. § 7111 authorizes such claims as to Board decisions. Both statutes contain identical language: "If evidence establishes the error, the prior decision shall be reversed or revised." 38 U.S.C. §§ 5109A(a), 7111(a); *see also* 38 C.F.R. §§ 3.105(a), 20.1403(a).

"'In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.'" *Crippen v. Brown*, 9 Vet.App. 412, 418 (1996) (quoting *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc)). Moreover, a CUE claim must identify the alleged error(s) with "'some degree of specificity.'" *Id.* at 420 (quoting *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993) ("to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different") (emphasis in original)); *Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (adopting this Court's interpretation of 38 C.F.R. § 3.105). To establish CUE in a final decision of an RO or the Board, a claimant must prove

> (1) that either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) that an error occurred based on the record and the law that existed at the time the decision was made, and (3) that, had the error not been made, the outcome would have been manifestly different.

*Grover v. West*, 12 Vet.App. 109, 112 (1999); *see also Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *Russell*, 3 Vet.App. at 313. CUE is the sort of error that is "undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made." *Russell*, 3 Vet.App. at 313-14. To establish CUE it must be clear from the face of the RO decision that a particular fact or law had not been considered in the RO's adjudication of the case. *See Crippen*, 9 Vet.App. at 421 (citing *Eddy v. Brown*, 9 Vet.App. 52, 58 (1996)).

This Court reviews CUE claims only when they have been previously adjudicated by the Board. *See Sondel v. Brown*, 6 Vet.App. 218, 220 (1994); *Russell*, 3 Vet.App. at 314-15; *see also Bradley v. Principi*, 14 Vet.App. 255, 257 (2001) (Court lacked jurisdiction over appellant's CUE claim improperly and improvidently raised for the first time on appeal to the Court). In reviewing Board decisions evaluating allegations of CUE in prior final decisions, the Court "cannot conduct a plenary review of the merits of the original decision." *Archer v. Principi*, 3 Vet.App. 433, 437 (1992). On appeal of a Board determination that there was no CUE in a prior final RO decision, this Court's review is limited to determining whether the Board decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including whether the decision is supported by an adequate statement of reasons or bases. 38 U.S.C. §§ 7261(a)(3)(A), 7104(d)(1); *see Lane v. Principi*, 16 Vet.App. 78, 83-84 (2002) (affirming this Court's longstanding precedents

regarding standard of review in CUE determinations), *aff'd*, 339 F.3d 1331 (Fed. Cir. 2003); *Beyrle v. Brown*, 9 Vet.App. 377, 382 (1996); *Eddy*, 9 Vet.App. at 57; *Russell*, 3 Vet.App. at 315. That standard of review, however, "'contemplates de novo review of questions of law.'" *Joyce v. Nicholson*, 19 Vet.App. 36, 43 (2005) (quoting *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004)).

### b. Application to the Appellant's Case

The issue before the Court is whether the Board erred in determining that the March 1950 rating decision severing service connection did not contain CUE. The appellant argues that the Board decision should be reversed because it "fails to establish that the RO met its burden to show [CUE] in the grant of service connection for the [appellant's] hip condition." Appellant's Br. at 7. The appellant asserts that the March 1950 decision contained CUE because "the RO imposed a test requiring to show 'abrupt or sudden pathological developments or trauma' to prove aggravation" of the appellant's hip injury. *Id.* at 9 (citing R. at 164). The appellant contends, therefore, that "the law then in effect was incorrectly applied." *Grover*, 12 Vet.App. at 112.

Here, it is not disputed that the appellant's hip condition preexisted service. Any worsening of the appellant's hip during service would be subject to the presumption of aggravation, which mandates that a "preexisting injury or disease will be considered to have been aggravated by active military . . . service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; *see* Veterans Regulation No. 1(a), part I, para. 1(d) (1943); *Joyce*, 19 Vet.App. at 44. As the Board correctly found, the March 1950 decision to sever was predicated on just such a finding. R. at 24; *see* R. at 162-65. Although the appellant argues that the March 1950 RO decision mischaracterized the evidence then of record by stating that there was no "abrupt or sudden pathological developments or trauma" demonstrating aggravation, as the Board explained, the 1950 decision nevertheless explicitly determined that the appellant's hip worsened based solely on the natural progress of his condition. Appellant's Br. at 7-11; R. at 24, 164. Moreover, as correctly pointed out by the Secretary, this Court has held that it is not arbitrary or capricious "for the Board to have found no CUE insofar as the . . . RO may have based its determination of nonaggravation

8

on an implicit finding, by clear and unmistakable evidence, of natural progression by the Medical Board." Secretary's Br. at 15 (citing *Joyce*, 19 Vet.App. at 49-50).

Although the appellant could have challenged the March 1950 decision via a direct appeal, thereby enjoying the benefit of the lower threshold of demonstrating clear error, he did not choose such an avenue. Under the much more burdensome CUE standard, however, the Court simply cannot conclude that the Board's determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 38 U.S.C. § 7261(a)(3)(A).

## 2. *Board's Characterization of the Evidence*

The appellant contends that the Board erred in characterizing his hip condition as a fracture. Appellant's Br. at 14. The appellant is correct insofar as the Board, in referring to the appellant's preexisting hip condition, stated that "it has been undisputed that the veteran fractured his left hip prior to service." R. at 10. The appellant's argument, however, fails in two respects. First, although it is obvious that the Board incorrectly characterized the appellant's hip condition as a fracture, it is not clear how this isolated misstatement prejudiced the appellant, nor does the appellant aid the Court by explaining any potentially prejudicial effect. *See Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009) (noting that the appellant bears the burden of showing that any alleged notice error resulted in prejudice); *Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (the Court must take due account of the rule of prejudicial error).

Second, as noted by the Secretary, the case on which the appellant chiefly relies in asserting error is a nonprecedential, single judge memorandum decision. Secretary's Br. at 18. The Court reminds counsel for the appellant that citation to nonprecedential opinions is not permitted by the Court's Rules of Practice and Procedure. U.S. VET. APP. R. 30(a) ("A party . . . may not cite as precedent any action designated as nonprecedential by the Court.").

## 3. *Medical Determinations*

The appellant argues that the March 1950 severance decision was erroneous inasmuch as the rating board made a medical determination regarding the natural progress of his hip condition. *See* Appellant's Br. at 14-15. This argument is without merit. Again, as pointed out by the Secretary, the case on which the appellant relies, *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), is inapplicable to a CUE analysis of a prior, final decision from 1950, as it was not then in effect. *See Grover*,

*supra*. Moreover, at the time of the severance of the appellant's service connection grant, the VA rating boards included physicians and, as noted by the Secretary, the chairman of the rating board that determined to sever the appellant's grant was indeed a medical doctor. Appellant's Br. at 18.

## B. Appellant's *Purple Heart* Argument

The gravamen of the appellant's alternative argument—and the sole issue necessitating panel review by this Court—is that, regardless of the merits of his CUE assertions, he is entitled to the benefits outlined in the June 2007 decision because VA's subsequent review and denial were based on an invalid procedure. Appellant's Supp. Br. at 5-6. The Secretary concedes that the procedure used was invalid, but argues that, because the appellant had ample opportunity to submit argument and because he received de novo review by the Board, VA's reliance on the invalid procedure did not prejudice the appellant.

The operative issue in this appeal is whether VA's reliance on the extraordinary award procedure (EAP), which has now been invalidated by the Federal Circuit, renders the August 2007 SOC void and, if so, how that affects the status of the appellant's claim. To be clear, VA committed two errors during its processing of the appellant's claim. First, it mistakenly sent him a proposed decision. Second, in attempting to correct the first error, VA used the EAP, which has now been declared invalid. Although the first error did not prejudice the appellant, the Court concludes that the second error is dispositive in that VA's use of the now-invalid EAP renders all VA action taken thereafter void.

There can be no question that the EAP, set forth in Fast Letter 07-19 and continued in Fast Letter 08-24, is no longer valid. In *Military Order of the Purple Heart v. Sec'y of Veterans Affairs*, the Federal Circuit made clear that the EAP, as "set forth in the Fast Letters[,] does not comport with the governing Regulations, . . . was not implemented in compliance with the requirements of the Administrative Procedure Act[,] . . . is not in accordance with 'law, rule, or regulation,' and is invalid." 580 F.3d 1293, 1297-98 (Fed. Cir. 2009) (citing 5 U.S.C. § 706(2)(A)). The issue presented is what effect the use of this invalid procedure has on this case.

Although the Secretary argues that, at worst, the Court should remand this matter to the Board so that the Board can remand the appeal to the RO with instructions to issue a new SOC, his argument is flawed. *See* Secretary's Supp. Br. at 4-5. Issuance of a new SOC would not cure the

error in this case. The fundamental problem is not that the appellant was denied an opportunity to submit evidence and argument. Indeed, as this is a CUE motion, the inquiry is limited to (1) whether the correct facts were not before the adjudicator; or (2) whether VA incorrectly applied the statutory or regulatory provisions extant at the time. *Damrel*, 6 Vet.App. at 245. As the Federal Circuit emphasized, the problem is that VA revised a favorable decision "without the knowledge and participation of the claimant." *Purple Heart*, 580 F.3d at 1294. As the C&P review of the June 2007 proposed decision and the August 2007 SOC were both predicated entirely on the EAP, and because the Federal Circuit has determined that the EAP is invalid, it follows that the August 2007 SOC is void ab initio. Moreover, as pointed out by the appellant, "[b]ut for the [EAP,] . . . this appeal would not have occurred as the benefit sought had been granted in the June 2007 DRO decision." Appellant's Supp. Br. at 6. The Court concludes that, based on the Federal Circuit's determination in *Purple Heart*, the August 2007 SOC was void ab initio and the resulting Board decision is likewise a legal nullity.

Because the subsequent actions were unlawful, the appellant was prejudiced by the EAP in this case regardless of the fact that it is clear that his assertion of CUE is without merit.[3] Here, because VA's reliance on the EAP renders the August 2007 SOC void ab initio, the Court must set aside the resulting Board decision "as 'not in accordance with law.'" *Brown v. Brown*, 5 Vet.App. 413, 422 (1993) (reversing Board's reduction of disability rating and remanding for Board to reinstate prior rating) (quoting 38 U.S.C. § 7261(a)(3)(A)); *see Wilson v. West*, 11 Vet.App. 383, 386-87 (1998) (applying same principle to case involving severance of service connection); *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 596 (1991) (reversing Board's decision that rating should be reduced because the Board had failed to provide adequate statement of reasons or bases). Applying *Purple Heart*, it is clear that the only proper remedy is to place the appellant in the position he was in before the EAP, in receipt of a favorable decision, even if that position is erroneous.

---

[3]Although our concurring colleague would not address the merits of the appellant's claim, we find it necessary to do so to fully address the Secretary's contention that the appellant was not prejudiced by the use of the EAP in this case. *See Shinseki v. Sanders*, 129 S.Ct. 1696, 1704-08 (2009) (requiring this Court to consider whether an error was prejudicial). Although the Supreme Court in *Sanders* warned against this Court becoming a "citadel[] of technicality," *Id*. at 1705 (internal quotation omitted), this is an exceptional case in which the technicality trumps the merits of the case.

11

The Court is aware that the Secretary has a serious interest in reviewing major decisions by front-line RO adjudicators. In an effort to reduce delays, VA has added thousands of new claims processors. FY 2010 Budget for Veterans' Programs: Hearing Before the S. Comm. on Veterans' Affairs, 111th Cong. (Mar. 10, 2009) http://www.senate.gov/fplayers/ CommPlayer /commFlashPlayer.cfm?fn=vetaff031009&st=060 (video of Sec'y Shinseki's testimony at 82:00 (response to question from Senator Murray)). The adjudicators are generally not attorneys. *See* DANIEL HARRIS, FINDINGS FROM RATERS AND VSOS SURVEYS 14 (The CNA Corporation, May 2007) (published as part of the Veterans' Disability Benefits Commission), *available at* http://www.vetscommission.org/displayContents.asp?id=4 (last checked June 22, 2010) (26% of adjudicators do not have college degrees, 40% have college degrees, and 34% have "[m]ore [t]han [c]ollege"). Furthermore, "it takes about 3 to 5 years for newly hired rating specialists to become proficient given the complexity of the job." U.S. GOV'T ACCOUNTABILITY OFFICE, PUBL'N NO. GAO-090910T, PRELIMINARY FINDINGS ON CLAIMS PROCESSING TRENDS AND IMPROVEMENT EFFORTS 12 (2009); *see also* Hearing on Review of Veterans' Disability Compensation: Undue Delay in Claims Processing: Hearing Before the S. Comm. on Veterans' Affairs, 110th Cong. 7 (Jul. 9, 2008) (statement of Rear Adm. Patrick W. Dunne, USN (Ret.), Acting Under Secretary for Benefits),http://frwebgate.access.gpo.gov/ cgi-bin/ getdoc.cgi? dbname=110_senate_hearings& docid=f:43860.pdf. It is reasonable, therefore, to have major awards subject to experienced supervision to avoid incorrect and inconsistent decisions that would confuse veterans and sap public confidence in the system. The Federal Circuit, however, considered these arguments and concluded that such procedures could only be instituted "with appropriate statutory and regulatory authorization." *Purple Heart*, 580 F.3d at 1297. In the meantime, an unfortunate side effect of the rush to reduce VA's backlog is that some veterans will receive incorrect decisions from inexperienced adjudicators.

We also agree with our concurring colleague that VA should have a means to protect itself from fraud and thus protect the public fisc. As we have been told by the Federal Circuit, however, introducing what is, in effect, a secret adjudication to a non-adversarial system whose procedures are set out by Congress in great detail is not a means available to accomplish this end, no matter how worthy.

12

In the absence of any lawful action by VA to internally review the June 2007 decision of the RO adjudicator that was favorable to the appellant, that decision must stand. On remand, the Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court's November 3, 2009, single-judge memorandum decision is withdrawn. The March 27, 2008, Board decision is REVERSED and the matter is REMANDED to the Board for action consistent with this opinion.

SCHOELEN, *Judge*, concurring in the result: Although I agree with the majority to the extent that it holds that the Board's decision must be reversed and the June 2007 decision of the Decision Review Officer (DRO) reinstated, I write separately to address several concerns.

First, I want to stress the importance of a veteran's participation in proceedings before VA, as recognized by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Military Order of the Purple Heart of the USA v. Sec'y of Veterans Affairs*, 580 F.3d 1293, 1297 (Fed. Cir. 2009) (*Purple Heart*). In the veterans benefits system, where veteran claimants often tread without the benefit of counsel or a shred of familiarity with the system's complex rules and regulations, it is essential that proceedings are not only fair in actuality but also in appearance. Our caselaw embraces this principle. *See Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) (observing that "systemic fairness and the appearance of fairness carries great weight" within the veterans benefits system); *see also Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006) (describing the unique nature of the veterans benefits system and recognizing the importance of the appearance of fairness in the adjudication of claims). Although the veterans benefits system "is not meant to be a trap for the unwary," *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009), it can be confusing to an inexperienced claimant. *See Disabled American Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1342 (Fed. Cir. 2003) (describing the process by which a veteran's claim works through the administrative procedure). Therefore, any procedure that essentially allows VA to go "behind the

back" of a veteran claimant—even one in the honorable pursuit of preventing fraud or error—must be carefully scrutinized.

The Federal Circuit discussed VA's extraordinary award procedure (EAP) in its *Purple Heart* decision and properly declared it invalid. As the Federal Circuit noted, this procedure was promulgated through a VA Fast Letter requiring that certain awards be referred from the regional office (RO) to the compensation and pension director "for 'final determination.'" *Purple Heart*, 580 F.3d at 1294. The Fast Letter directed that RO "decisions granting Extraordinary Awards shall not be disclosed to the veteran or his representative, that the claimant is not to be informed that the [(Compensation and Pension)] C & P review occurred, and that the claimant is not to be informed if the C & P Service reduced the original award." *Id*. at 1294-95. This procedure prevented a veteran claimant from "knowing what persuaded an unidentified decision-maker to reduce the award that was made by the persons before whom the hearing was held." *Id*. at 1297. The EAP flew in the face of the fairness principles discussed above and, as the Federal Circuit recognized, affected substantive rights set forth in the Secretary's own regulations. *Id*.

VA should, and must, have a system to monitor quality control and to deter employee fraud, but such a system cannot come at the expense of the claimant veteran. The system set forth in the VA Fast Letter is *not* in place to protect veterans from erroneous decisions made by inexperienced adjudicators, and VA is simply not permitted to infringe upon the rights of the veteran, even if protecting those rights comes at a cost to the Agency. I note that, until VA properly undertakes to provide a system to review large awards, it is possible for the Agency to mitigate the cost of an erroneous decision in a manner that does not infringe on the rights of veterans, such as by the use of 38 C.F.R. § 3.105(a), which permits prior decisions to be reversed or amended on the basis of clear and unmistakable error. *See* 38 C.F.R. § 3.105(a) (2010) ("Previous determinations which are final and binding . . . will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended.").

Finally, I am disturbed by the majority's dedication of a significant portion of this opinion to what amounts to nothing more than dicta. The ultimate holding of this opinion is that the Board's decision is the product of a defective procedure and, therefore, void ab initio. Why expend so much judicial ink on the merits of a Board decision that is a legal nullity? There is simply no Board

decision for this Court to affirm, modify, or reverse here. *See* 38 U.S.C. § 7252(a) (setting forth this Court's jurisdiction to review Board decisions). What effect will these dicta have on future proceedings? The decision, as written, appears to provide VA a template to sever the appellant's benefits in the future, if it chooses to do so. And, although the majority states that reaching the merits of the appellant's claim is necessary "so to fully address the Secretary's contention that the appellant was not prejudiced by the use of the EAP," Majority Decision at n. 3, I do not see how the Court can perform a harmless error analysis of a Board decision that does not exist. Thus, I respectfully maintain that the majority should have limited its decision to a finding that the Board decision was void ab initio and that the June 2007 DRO decision should be reinstated.