Roy E. LUALLEN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–398.

United States Court of Veterans Appeals.

July 28, 1995.

Roy E. Luallen, pro se.

Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. Gen. Counsel; David W. Engel, Deputy Asst. Gen. Counsel; and Susan A. Wuchinich, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

FARLEY, Judge:

The appellant appeals from a March 14, 1994, decision of the Board of Veterans' Appeals (Board or BVA) which found that the appellant had failed to allege a substantial error of fact or law as required by 38 U.S.C. § 7105(d) when he alleged that VA had committed clear and unmistakable error (CUE) in the March 1946 and May 1947 rating decisions. For the reasons set forth below, the Court will affirm the Board's decision.

## I.

The appellant served on active duty from November 1943 until he was honorably dis-charged in February 1946. Record (R.) at 14. During service, the appellant received medical treatment for an "ill defined condition of [the gastrointestinal] tract," and an x-ray was taken which showed that a duodenal ulcer was present. R. at 24. The appellant's separation physical examination recorded "abdominal wall and viscera NORMAL." R. at 40.

In February 1946, the appellant filed a claim for compensation for "stomach trouble" (R. at 44), and in March 1946, the VA regional office (RO) denied his claim because "stomach trouble" was not shown on his discharge examination. R. at 49. In April 1947, the appellant requested that his claim be reopened (R. at 53), and he submitted a letter from Dr. Diamond who wrote that the appellant "was also hospitalized in March 1945 with stomach trouble and altho[ugh] he was given a tentative diagnosis of stomach ulcers[,] he has exhibited no symtoms [sic] since." R. at 54. By decision dated May 1, 1947, the RO denied the appellant's claim based on the same reasoning as in the previous decision, noting specifically that Dr. Diamond's medical statement had been considered. R. at 57. The appellant did not appeal either of these RO decisions.

In March 1989, the appellant filed a claim for a duodenal ulcer (R. at 83), and in June 1989, the RO refused to reopen the appellant's claim because he had not submitted new and material evidence. R. at 90–91. The appellant then submitted a Statement in Support of Claim, writing, "I strongly hold that your original denial [of the claim for duodenal ulcers] was a gross error and capricious decision. How can a clearly diagnosed disease that was done in a General Hospital not be recognized under 38 C.F.R. § 3.301, 3.102, 3.304, 4.23, 4.3, and 38 U.S.C. § 310 and 331?" R. at 85. In June 1990, the appellant's service representative also provided a statement alleging that the RO decision of March 4, 1946, and "subsequent decisions denying this war time veteran service connection for duodenal ulcers" were in violation of 38 C.F.R. § 3.105(a) because they were a result of clear and unmistakable error. R. at 94–99. The errors alleged were failure to correctly apply the reasonable

doubt doctrine (R. at 94–95), failure to provide the appellant a physical examination, and "the arbitrary and capricious" reliance upon the discharge examination's failure to mention the appellant's ulcer disease in the 1946 decision. R. at 96. After further processing, in July 1992, the BVA remanded the appellant's claim ordering the RO to "adjudicate whether the prior rating actions of March 4, 1946, and May 1, 1947, [were] clearly and unmistakably erroneous. The RO should also adjudicate the issue of service connection for gastroesophageal reflux disease." R. at 203. In December 1992, the RO found that there was "no clear and unmistakable error seen in the ratings from 1946 and 1947." R. at 208. However, the RO awarded service connection for "GI reflux with history of peptic ulcer disease," and assigned a 10% rating from June 8, 1989. *Ibid.* In May 1993, the appellant filed a Notice of Disagreement concerning the RO finding of no CUE in the March 1946 and May 1947 rating decisions, requested that his 10% rating award be dated as of "March 1947 [sic]," and asserted that the RO had failed to consider his private doctor's statement in the May 1947 decision. R. at 214–15. In September 1993, he perfected his appeal to the BVA and argued that CUE had occurred in the adjudication of his claim in 1946 and 1947 because the RO had failed to apply the presumption of soundness, had failed to assist him in developing his claim, had failed to apply the benefit-of-the-doubt doctrine and had failed to review his complete record. He again stated that the RO had failed to review his private physician's statements and diagnosis. R. at 229–30.

## II.

The authority for reversing or amending a prior adjudication, if it is established that there was "clear and unmistakable error," is created by regulation, 38 C.F.R. § 3.105(a) (1994), not by statute. The regulation states in pertinent part:

(a) *Error.* Previous determinations which are final and binding, including decisions of service connection ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a).

To establish a valid CUE claim, an appellant must show that "Either the correct facts, as they were known at the time, were not before the adjudicator[,] or the statutory or regulatory provisions extant at the time were incorrectly applied. The claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (en banc). Also, "[i]f a claimant-appellant wishes to reasonably raise CUE[,] there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error ... that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993). Subsequently, Judge Holdaway succinctly explained the principle when he wrote:

If ... it is meant that there is a higher threshold for raising CUE in a BVA decision *not* subject to our review than there is for raising a garden variety error in a BVA decision subject to our review[,] then undoubtedly appellant is correct. There *is,* necessarily, a more stringent [pleading] requirement. In this respect the *Fugo* case conforms entirely to past precedent and merely makes explicit what those past cases perhaps implied. Pleading and proof are two sides of the same coin. If there is a heightened proof requirement, there is, a fortiori, a heightened pleading requirement. ... The Secretary's own definition raises an extremely high threshold, clear and *unmistakable,* i.e., beyond any reasonable dispute. Moreover, it is a collateral attack on a final decision, thus the strong presumption of validity must be overcome. It would be strange, indeed, if there was not a more stringent requirement for the standard necessary to raise such a rare

kind of error.... The [*Fugo*] opinion is entirely consistent with past precedent.

*Fugo v. Brown,* 6 Vet.App. 162, 163 (1994) (per curiam order) (Holdaway, J., concurring.)

■ Here, none of the appellant's alleged errors is the "kind of error ... that if true, would be CUE on its face." *Fugo,* 6 Vet.App. at 44. Further, the appellant implied that the correct facts were not before the RO when he alleged that the RO had failed to consider Dr. Diamond's letter in the previous adjudications of his claim. However, the RO decision clearly stated that Dr. Diamond's letter, which had noted that the appellant had been given "a tentative diagnosis of stomach ulcers [although] he has exhibited no symtoms [sic] since," had been considered. Thus, the appellant has failed to show that the correct facts were not before the RO at the time of its decision. Also, the appellant reinforced his allegations with a list of laws and regulations he asserted were violated by the RO, i.e., failure to apply the presumption of soundness, failure to review the appellant's complete record, failure in the duty to assist, failure to properly apply the reasonable doubt doctrine. R. at 229–30. He did not assert with any degree of specificity how a different application of the cited laundry list of laws and regulations and the doctrines they express would dictate a "manifestly different" result. *Fugo,* 6 Vet.App. at 44. Rather, in effect the appellant is actually asserting disagreement with how the RO evaluated the facts before it, an allegation which is inadequate to raise a CUE claim. *See Fugo,* 6 Vet.App. at 44 ("[S]imply to claim CUE on the basis that previous adjudications had improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE" (citing *Russell, supra* )). In sum, this appellant's claim is virtually identical to that presented in *Fugo* and, therefore, must suffer the same fate. On this basis, and this basis alone, the Court will affirm the Board's decision.

### III.

The March 14, 1994, BVA decision is a model of imprecision. Although the Board initially defined the issue to be decided as pertaining to the merits of the appellant's claim, i.e., "Whether there was clear and unmistakable error in the March 1946[ ] and May 1947 rating actions," the BVA did not reach the merits. Instead, the BVA first decided that the appellant's claim was not well grounded. R. at 6. It then found as fact that the appellant had failed to allege a specific error of fact or law sufficient to compel a change in the 1946 or 1947 decisions, "concluded" that no substantial error of fact or law was alleged in the 1946 and 1947 rating actions, and then purported to dismiss the appeal under 38 U.S.C. § 7105(d)(5). R. at 7. Finally, the BVA also dismissed the appeal because "the appellant did not meet the requirements necessary to raise the issue of [CUE]." R. at 8.

■ Although this potpourri may seem to be of little significance, particularly in light of the Court's ultimate decision that this BVA decision must be affirmed, it is important to note that each statement invokes distinct legal consequences and precedents. Moreover, judicial review will be conducted under different standards, depending upon which statement actually served as the predicate for the Board's decision. For example, if the BVA actually did reject the appellant's claim on the merits, as its statement of the issue would appear to preordain, our review on appeal would be under the "arbitrary and capricious" standard of review. *See* 38 U.S.C. § 7261(a)(3)(A); *see also Russell,* 3 Vet.App. at 315. If the BVA actually decided that the appellant's CUE claim was "not well-grounded," as it wrote under the heading DECISION OF THE BOARD, our review would be conducted under the non-deferential de novo standard. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Similarly, if the BVA did dismiss the appeal as insufficient as a matter of law, as it said it was doing at the end of the discussion of REASONS AND BASES FOR FINDINGS AND CONCLUSION, our review would be de novo. Finally, if a factual finding was determinative, we would review under the deferential "clearly erroneous" standard. *See* 38 U.S.C. § 7261(a)(4).

In *Holbrook v. Brown,* 8 Vet.App. 91 (1995), this Court acknowledged the BVA's authority to rely upon the "administrative

law concept that an administrative agency may rule in the alternative" when it resolves a dispute. Here, however, the Board's "shotgun" approach resulted not in the sort of well-reasoned alternative rationales approved in *Holbrook*, but in a collection of unrelated and disconnected statements of legal conclusions. The interests of veterans and of judicial review of the adjudication of the claims of veterans would be far better served by decisions which are reasoned and written with precision. To that end, the Court will discuss two of the justifications served up by the Board in its obfuscatory approach.

### A.

■ It is true that a claimant "shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107; *see also Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). However, in *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994), the Court stated:

> The term "well-grounded," which is often the subject of general application to both evidence and law in other judicial and administrative decisions, has a unique statutory origin and context in the law of veterans' benefits. In 38 U.S.C. § 5107(a), the use of the term is confined to an evidentiary context: a claimant "shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." Following the statute, this Court has for the most part limited use of the phrase [well grounded] in its decisions to the character of the evidence presented by a claimant. *See, e.g., King v. Brown*, 5 Vet.App. 19, 21 (1993); *Tirpak* [2 Vet.App. at 610–11]. To avoid confusion, in a case such as this one, where the law and not the evidence is dispositive, the claim should be denied or the appeal to the BVA terminated because of the absence of legal merit or the lack of entitlement under the law. *Cf.* FED.R.CIV.P. 12(b)(6) ("failure to state a claim upon which relief can be granted"). In view of the statutory origin of the phrase well grounded, it would be legally imprecise, if not incorrect, to apply that

phrase and our jurisprudence surrounding it in such a case.

*Ibid.*

Here, since the determinative issue was not evidentiary but legal, i.e., has the appellant complied with the legal requirements to plead a CUE claim, it was "legally imprecise, if not incorrect" for the Board to purport to decide that the appellant's CUE claim was not well grounded. *Id.*

### B.

Section 7105(d)(5) of title 38, U.S.Code, provides that "The Board of Veterans' Appeals may dismiss any appeal which *fails to allege* specific error of fact or law in the determination being appealed." (Emphasis added). The BVA's determination here that the appellant had failed to allege an error of fact or law as required by § 7105(d)(5) is a conclusion of law which the Court will review de novo. *Cf. Cropper v. Brown*, 6 Vet.App. 450, 454 (1994) ("Whether the Secretary or Board has properly interpreted a law or regulations is a matter which this Court reviews de novo."); *Hunt v. Derwinski*, 1 Vet.App. 292, 293 (1991).

■ It appears that the Board misread its authority under § 7105(d)(5). The problem is not that the appellant failed to *allege* error; it is that the appellant failed to provide "persuasive reasons ... as to why the result would have been *manifestly* different but for the alleged error." *Fugo*, 6 Vet.App. at 44. The appellant beyond question alleged specific errors of fact or law when he provided the list of statutory and regulatory provisions which he asserted had been violated in the 1946 and 1947 adjudications. While such allegations ultimately may not satisfy the heightened pleading requirements for the assertion of a CUE claim under 38 C.F.R. § 3.105(a) after *Fugo*, it is more than adequate to satisfy the pleading requirements of § 7105(d)(5) and to avoid summary dismissal by the Board under that statute. Therefore, the BVA erred in purporting to dismiss the appellant's claim under 38 U.S.C. § 7105(d)(5), but such error did not result in prejudice to the appellant, since the Court affirmed the BVA decision on other grounds.

*See* 38 U.S.C. § 7261(b); *Yabut v. Brown,* 6 Vet.App. 79, 84–85 (1993) (Court is required by statute to take account of the rule of "prejudicial error").

### III.

Accordingly, the Court AFFIRMS the Board's decision of March 14, 1994.