Citation Nr: 1829753 
Decision Date: 07/24/18 Archive Date: 08/02/18

DOCKET NO. 16-44 177 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUE

Whether a January 17, 1983, decision of the Board of Veterans' Appeals (Board), which denied a rating in excess of 30 percent for psychophysiologic gastrointestinal reaction with residuals of colostomy, should be revised or reviewed on the grounds of clear and unmistakable error (CUE).


REPRESENTATION

Moving Party represented by: Peter J. Sebekos, Attorney


ATTORNEY FOR THE BOARD

Joshua Castillo, Counsel




INTRODUCTION

The Veteran had active duty from September 1969 to September 1971, including combat service in the Republic of Vietnam for which he received two Bronze Stars and two Purple Heart Medals.

This matter comes before the Board as an action on the motion of the Veteran alleging CUE in a Board decision rendered on January 17, 1983, which denied a rating in excess of 30 percent for a service-connected disability then characterized as psychophysiologic gastrointestinal reaction with residuals of a colostomy.

Historically, in February 2012, the Board denied the Veteran's motion to revise the January 1983 Board decision on the basis of CUE; however, in November 2013, the Board vacated it's denial and dismissed the motion without prejudice. In July 2016, the Veteran submitted the motion that is currently before the Board.

The Board acknowledges that the issues of (i) entitlement to an increased rating for residuals of a colostomy, to include as due to CUE in the March 1978 rating decision; (ii) entitlement to an effective date earlier than June 25, 2001, for the award of a 100 percent rating for a psychiatric disorder, to include as due to CUE in prior Regional Office rating decisions; and (iii) entitlement to an increased rating for hearing loss, evaluated as noncompensably disabling prior to July 22, 2008, and in excess of 10 percent disabling thereafter, are addressed in a remand issued concurrently with this decision under separate cover.


FINDINGS OF FACT

1. In a January 17, 1983, decision, the Board denied the Veteran's claim of entitlement to a rating in excess of 30 percent for psychophysiologic gastrointestinal reaction with residuals of colostomy.

2. The correct facts, as they were known at the time of the January 17, 1983, decision were before the Board, and the statutory or regulatory provisions extant at the time, were correctly applied.


CONCLUSION OF LAW

The January 17, 1983, Board decision denying a rating in excess of 30 percent for psychophysiologic gastrointestinal reaction with residuals of colostomy was not clearly and unmistakably erroneous. 38 U.S.C. § 7111 (2002); 38 C.F.R. §§ 20.1400, 20.1403 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In January 1972, the RO granted service connection for colostomy residuals and assigned a 10 percent rating under Diagnostic Code 7301, effective September 26, 1971.

In March 1978, the RO granted service connection for a nervous condition, based in part, on the Veteran's contention that the condition was proximately due to his service-connected bowel condition and a VA medical report stating that the Veteran's bowel problems, job dissatisfaction, and marital problems all contribute to a vicious cycle making him more anxious and creating more problems. The RO evaluated the nervous condition with the service-connected colostomy residuals under Diagnostic Codes 7301-7319; recharacterized the issue as residuals colostomy with psychophysiological GI reaction; and assigned a 30 percent rating from September 1, 1977. The RO subsequently RO evaluated the psychophysiologic gastrointestinal reaction with residuals of colostomy under Diagnostic Code 9520 and denied a rating in excess of 30 percent.
 
In January 1983, the Board denied the Veteran's claim of entitlement to a rating in excess of 30 percent for psychophysiologic gastrointestinal reaction with residuals of colostomy. The Board concurred with the RO's determination that the Veteran's residuals colostomy with psychophysiological GI reaction should be evaluated as a psychophysiologic disorder, reasoning that the psychophysiological aspect of the disorder represented the major degree of disability.

The Veteran alleges CUE in the Board's January 17, 1983, decision, on the basis that it failed to assign separate, higher ratings for the Veteran's psychiatric and colon disorders. The Veteran contends that either the correct facts were not before the Board or the Board improperly applied 38 C.F.R. 4.132, Diagnostic Code 9502, notes 1-2 (1982). In support, he cites the following medical reports, explaining that they show that the Veteran's psychiatric and colostomy disorders are not organic and psychiatric manifestations of a single disability, but, rather two separate disabilities that warrant separate ratings: a September 1980 medical report noting anxiety complicated by depression; a November 1980 medical report noting that the Veteran had anxiety neurosis with psychophysiologic gastrointestinal reaction; a March 1981 medical report indicating anxiety, depression, and irritability; and a mental status evaluation noting moderate depression and irritability and diagnosing reactive depressive neurosis.

A decision by the Board is subject to revision on the basis of CUE. If evidence establishes the error, the prior decision shall be reversed or revised. For the purpose of authorizing benefits, a rating or other adjudicative decision of the Board that constitutes a reversal or revision of a prior decision of the Board on the grounds of CUE has the same effect as if the decision had been made on the date of the prior decision. Review to determine whether CUE exists in a case may be instituted by the Board on the Board's own motion or upon request of the claimant. A request for revision of a decision of the Board based on CUE may be made at any time after that decision is made. Such a request shall be submitted directly to the Board and shall be decided by the Board on the merits, without referral to any adjudicative or hearing official acting on behalf of the Secretary. See 38 U.S.C. § 7111 (2002).

Motions for review of Board decisions on the grounds of CUE are adjudicated in accordance with the provisions set forth in 38 C.F.R. §§ 20.1400- 1411 (2017). As defined in those regulations, CUE is the kind of error of fact or law that, when called to the attention of subsequent adjudicators, compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. See 38 C.F.R. § 20.1403(a) (2017). Generally, CUE is present only when either the correct facts, as they were known at the time, were not before the Board, or when the statutory and regulatory provisions then in effect were incorrectly applied. Id. As such, a review for CUE in a prior Board decision must be based on the record and the law that existed when the contested decision was made. See 38 C.F.R. § 20.1403(b)(1) (2017).

The foregoing regulations further dictate that Board decisions may only be revised or reversed on the grounds of CUE where there was an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome at that time. Absent a clear showing that a different result would have ensued, the alleged error does not rise to the level of CUE. See 38 C.F.R. § 20.1403(c) (2017). Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, then the error complained of cannot be, ipso facto, clear and unmistakable. See Fugo v. Brown, 6 Vet. App. 40 (1993).

Moreover, the United States Court of Appeals for Veterans Claims (Court) has held that, under the heightened pleading requirements set forth in Fugo, an alleged CUE must be the "kind of error... that if true, would be CUE on its face." Id. A claimant must do more than cite a "laundry list" of laws and regulations and the doctrines they express. A mere disagreement with how the RO evaluated the facts before it does not constitute an allegation which is adequate to raise a CUE claim. See Luallen v. Brown, 8 Vet. App. 92 (1995); Damrel v. Brown, 6 Vet. App. 242 (1994). 

Examples of situations that are not CUE include a changed diagnosis, that is, a new diagnosis that "corrects" an earlier one considered in the Board decision; VA's failure to fulfill the duty to assist; and, allegations based on improper evaluation of evidence, i.e., a disagreement as to how the facts were weighed or evaluated. See 38 C.F.R. § 20.1403(d)(1-3) (2017). Moreover, CUE does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation. See 38 C.F.R. § 20.1403(e) (2017).

Conversely, CUE will be held to exist where (1) there is an error in a prior adjudication through the application of facts or law, which were incorrect at the time of their application, and (2) that error caused an inaccurate result. See Allin v. Brown, 6 Vet. App. 207, 210 (1994). An assessment of CUE must be made against the law as it existed when the determination alleged to be erroneous was made. See Russell v. Principi, 3 Vet. App. 310, 314 (1992). CUE is an administrative failure to apply the correct statutory or regulatory provisions to the correct and relevant facts. See Oppenheimer v. Derwinski, 1 Vet. App. 370 (1991).

The Board now turns to the specific statutes and regulations and the relevant facts that were before the January 17, 1983, adjudicators. At that time, the Veteran was in receipt of a 30 percent rating for a multifaceted disorder diagnosed as a psychophysiologic gastrointestinal reaction with residuals of a colostomy. That service-connected disability was rated by analogy under the diagnostic code then in effect governing psychophysiologic gastrointestinal reaction. 38 C.F.R. § 4.132; Diagnostic Code 9502 (prior to February 3, 1988). 

Parenthetically, the Board notes that, following the January 17, 1983, decision, the schedular criteria for psychiatric disorders were twice revised. See 53 Fed. Reg. 23 (Jan. 4, 1988) (effective Feb. 3, 1988); and 61 Fed. Reg. 52,695 (Oct. 8, 1996) (effective Nov. 7, 1996). Those revisions resulted in the renumbering of the applicable regulatory provisions and the deletion of the specific listing for psychophysiologic gastrointestinal reaction. See 61 Fed Reg. 52,700 (Oct. 8, 1996). However, the revised criteria are not applicable in the instant case given that the Veteran is alleging CUE in a Board decision that predates February 3, 1988. As such, the Board must confine its analysis to the criteria in effect at the time that decision was rendered. See 38 C.F.R. § 20.1403(b)(1).

Prior to February 3, 1988, Diagnostic Code 9502 directed that psychophysiologic gastrointestinal reaction was to be evaluated under the General Rating Formula for Psychoneurotic Disorders. 38 C.F.R. § 4.132. 

Specifically, the General Rating Formula for Psychoneurotic Disorders provided for a 100 percent evaluation when 1) the attitudes of all contacts except the most intimate were so adversely affected as to result in virtual isolation in the community; 2) there was totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior; or 3) there was demonstrable inability to obtain or retain employment. See 38 C.F.R. § 4.132. 

Significantly, each of these three criteria served as an independent basis for granting a 100 percent rating. See Johnson v. Brown, 7 Vet. App. 95, 97 (1994). In other words, if the Veteran were demonstrably unable to obtain or retain gainful employment due to the service-connected psychoneurotic disorder, he would be entitled to a 100 percent evaluation regardless of whether the other criteria had been met. Conversely, social impairment per se would not be used as the sole basis for any specific percentage evaluation, but was of value only in substantiating the degree of disability based on all of the findings. See note (1) of the General Rating Formula for Psychoneurotic Disorders in effect prior to February 3, 1988. To have warranted a 70 percent evaluation under the aforementioned criteria, the evidence would have needed to show that the ability to establish and maintain effective or favorable relationships was seriously impaired, with the psychoneurotic symptoms of such severity and persistence that there was pronounced impairment in the ability to obtain or retain employment. A 50 percent rating required that the ability to establish or maintain effective or favorable relationships with people was substantially impaired; and by reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels were so reduced as to result in severe industrial impairment. A 30 percent rating was assignable when there was definite impairment in the ability to establish or maintain effective or favorable relationships with other people. Tellingly, the criteria for such an evaluation were met based on psychoneurotic symptoms that reduced initiative, flexibility, efficiency and reliability levels so as to produce definite industrial impairment. 

In this regard, the Board notes that the Court has since held that the term "definite," set forth in 38 C.F.R. § 4.132, was "qualitative" in nature, whereas the other terms were "quantitative," thereby inviting the Board to "construe" the term "definite" in a manner that would quantify the degree of impairment. See Hood v. Brown, 4 Vet. App. 301 (1993). Moreover, in a precedent opinion dated November 9, 1993, the VA General Counsel concluded that "definite" was to be construed as "distinct, unambiguous, and moderately large in degree," thereby representing a degree of social and industrial inadaptability that was "more than moderate but less than rather large." VAOPGCPREC 9-93. 

Of particular relevance in this case, the foregoing rating criteria provided that, when two diagnoses were presented, one organic and the other psychological or psychoneurotic, covering the organic and psychiatric aspects of a single disease entity, only one percentage evaluation was to be assigned, under the appropriate diagnostic code determined to represent the major degree of disability. See note (2) of the General Rating Formula for Psychoneurotic Disorders (effective prior to February 3, 1988).

Here, the Veteran contends that either the correct facts were not before or ignored by the Board in January 1983. See CUE Motion (June 26, 2016) and Motion to Vacate (June 19, 2016). However, the Board finds that the Veteran has not established that the correct facts, as they were known at the time, were not before Board in January 1983.

First, the Veteran's assertion that the Board erroneously relied upon the November 1980 VA examination report amounts to an attack on how the Board weighed the evidence of record, which does not amount to CUE. See Luallen, 8 Vet. App. 92; Damrel, 6 Vet. App. 242; Fugo, 6 Vet. App. 40. Additionally, even if it had been proven that the November 1980 VA examination report contained inaccurate facts, it is impossible to determine whether the Board's reliance upon the report would have undebatably changed its decision, particularly, since the November 1980 report was one of the many pieces of evidence identified on the findings of facts, but was not specifically identified in the Discussion and Evaluation section, wherein the Board explained it's decision. Accordingly, the Board's reliance upon the November 1980 VA examination report does not amount to CUE.

Second, the Veteran's assertion that the December 30, 1981, psychiatric evaluation report was not before or ignored by the Board does not amount to CUE. Initially, the evidence shows that report was before the Board in January 1983: the report was identified and outlined in an April 1982 rating decision as well as the Board's January 1983 decision. Significantly, the Veteran admits that he is unsure whether the report was before the Board in January 1983. See, e.g., CUE Motion, 22, FN 18; id. at 34. Additionally, any assertion that the Board improperly weighted the evidence of the report does not rise to the level of CUE.

The Veteran asserts that the Board incorrectly applied 38 C.F.R. 4.132, Diagnostic Code 9502, notes 1-2 (1982), See CUE Motion (June 26, 2016) and Motion to Vacate (June 19, 2016). In this regard, the Veteran's attorney argues that while the Veteran's psychiatric disorder may have been aggravated by his gastrointestinal disorder, it stems, at least in part, from the in-service combat, and thus, should not have been evaluated as an aspect of the Veteran's service-connected gastrointestinal disorder. See id. In reviewing the evidence extant at the time of the January 1983 decision, the Board notes that there were several medical opinions relating the Veteran's psychiatric disorder to his gastrointestinal disorder. Indeed, the March 1978 rating decision that granted service connection for a nervous condition was predicated, at least in part, upon the Veteran's contention that the condition was proximately due to his service-connected bowel condition and a VA medical report stating that the Veteran's bowel problems contribute to his psychiatric disorder. Given the presence of conflicting evidence regarding whether the Veteran's psychiatric disorder was an aspect of his gastrointestinal disorder coupled the fact that a medical professional sat on the panel that rendered the Board's January 1983 decision, it is, at best, debatable as to whether the Veteran's psychiatric disorder was separate and distinct from his gastrointestinal disorder. Significantly, an attack on the manner with which the Board weighed the evidence (to determine whether the psychiatric and colostomy disorders were aspects of a single disability) does not rise to the level of CUE. Additionally, as the Board concluded that the Veteran's psychiatric and colostomy disorders were aspects of a single disability, its decision to assign a single rating based on the predominant disability complied with 38 C.F.R. 4.132, Diagnostic Code 9502, notes 1-2 (1982).

In conclusion, the Board finds that the Veteran has not established that the January 17, 1983, adjudicators lacked access to any of the correct facts, as they were known at the time. Nor has he shown that, but for incorrect application of the statutory and regulatory provisions then in effect, the outcome of his claim would have been manifestly different. Accordingly, the Board has no basis to conclude that the January 17, 1983, decision contained CUE and, thus, must deny the motion to revise or reverse that prior decision on such grounds.


ORDER

The motion to revise or reverse a January 17, 1983, Board decision, denying a rating in excess of 30 percent for psychophysiologic gastrointestinal reaction with residuals of colostomy, on the basis of CUE is denied. 



_________________________________________________
STEVEN D. REISS 
Veterans Law Judge, Board of Veterans' Appeals