Citation Nr: 1829882 
Decision Date: 09/17/18 Archive Date: 09/24/18

DOCKET NO. 14-39 508 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUE

Whether a November 1969 rating decision involved Clear and Unmistakable Error (CUE) in reducing the evaluation assigned for the Veteran's service-connected lumbosacral strain from 20 to 10 percent effective February 1, 1970.


REPRESENTATION

Appellant represented by: Nancy Y. Morgan, Attorney


WITNESS AT HEARING ON APPEAL

The Appellant-Veteran


ATTORNEY FOR THE BOARD

T. Wishard, Counsel


INTRODUCTION

The Veteran had honorable active military service from August 1961 to August 1964.

This appeal to the Board of Veterans' Appeals (Board/BVA) is from a May 2013 rating decision and an August 2015 administrative decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Los Angeles, California.

In February 2015, the Veteran testified at a video-conference hearing before the undersigned Veterans Law Judge (VLJ) of the Board. A copy of the hearing transcript is in the claims file, which is entirely paperless, so the records are being maintained electronically.

In July 2015, the Board remanded this claim to the Agency of Original Jurisdiction (AOJ) for further development. Subsequently, in November 2015, the Board denied this claim as concerning whether a November 1969 rating decision involved CUE in reducing the evaluation assigned for the Veteran's service-connected lumbosacral strain from 20 to 10 percent. He appealed that decision to the U.S. Court of Appeals for Veteran's Claims (Veterans Court/CAVC). In June 2017, the Court issued a Memorandum Decision vacating the Board's November 2015 decision and remanding the claim to the Board for re-adjudication in compliance with the memorandum decision. 

In March 2018, the Board, in turn, remanded the claim for still further development. In April 2018, however, the Veteran filed a motion for reconsideration. In May 2018, the Board notified him that, because the March 2018 action was a remand, so in the nature of a preliminary order, it was not a final decision subject to reconsideration; therefore, his motion was dismissed. He since has filed a petition for extraordinary relief at the CAVC, and the Court has enjoined VA from conducting the ordered remand development.

Primarily as a result, the Board is vacating that remand and issuing this decision instead deciding the CUE claim.

ORDER TO VACATE

The Board may vacate an appellate decision at any time upon request of the appellant or his or her representative, or on the Board's own motion, when an appellant has been denied due process of law or when benefits were allowed based on false or fraudulent evidence. 38 U.S.C.A. § 7104(a); 38 C.F.R. § 20.904.

As already alluded to, in March 2018 the Board remanded this CUE claim to the AOJ for further development; the Board's remand directive for a "retrospective" examination opinion was improper given that a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. See Damrel v. Brown, 6 Vet App. 242, 245 (1994), quoting Russell v. Principi, 3 Vet App. 310, 313-14 (1992) (en banc).

Accordingly, the Board's March 2018 remand of this claim regarding whether there was CUE in a November 1969 RO decision that reduced the Veteran's lumbosacral strain evaluation from 20 percent to 10 percent effective February 1, 1970 is vacated.

Having vacated the Board's March 2018 remand, the Board will once again adjudicate this CUE claim.


FINDINGS OF FACT

The November 1969 rating decision's reduction of the disability rating assigned to the service-connected lumbosacral strain from 20 to 10 percent prospectively effective as of February 1, 1970 was adequately supported by the evidence then of record, considered the correct facts as they then existed, correctly applied statutory or regulatory provisions extant at that time, and did not contain an undebatable or egregious error of fact or law that was outcome determinative.


CONCLUSION OF LAW

There is no CUE in that November 1969 rating decision reducing the evaluation assigned for the service-connected lumbosacral strain from 20 to 10 percent effective as of February 1, 1970. 38 U.S.C.A. § 5109A; 38 C.F.R. §§ 3.303, 4.71a, Diagnostic Codes 5294, 5295 (1969); 38 C.F.R. § 3.105 (2018).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran contends that a November 1969 rating decision involved CUE in reducing his disability evaluation from 20 percent to 10 percent. If CUE is found in a prior RO decision, the prior decision will be reversed or revised. For the purposes of authorizing benefits, reversal or revision of the prior decision on the grounds of CUE has the same effect as if the correct decision had been made on the date of the prior decision. 38 U.S.C.A. § 5109A; 38 C.F.R. § 3.105 (a).

The Court has propounded the following three-pronged test to determine whether CUE is present in a prior determination: (1) Either the correct facts as they were known at the time were not before the adjudicator (that is, more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at that time were incorrectly applied; (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made;" and (3) a determination that there was CUE must be based on the record and law which existed at the time of the prior adjudication in question. See Damrel v. Brown, 6 Vet App. 242, 245 (1994), quoting Russell v. Principi, 3 Vet App. 310, 313- 14 (1992) (en banc). 

The Court has further stated that CUE is a very specific and rare kind of "error." It is the kind of error, of fact or of law, which when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable. See Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993).

In October 1964, the Veteran was granted service connection for a lumbosacral strain, evaluated as 20-percent disabling, retroactively effective from August 1964. In September 1969, the RO ordered a routine physical examination to determine the then current severity of the Veteran's service-connected lumbosacral strain. The examination was provided in October 1969. 

The 1969 VA examiner noted the history of the Veteran's condition, reporting that the Veteran had experienced back pain since his initial injury in 1963. The Veteran also reported that he had lost approximately five days of work a month in the past year due to his service-connected back condition. Physical examination of the thoracolumbar spine revealed pain with forward bending but only a slight restriction to antiflexion with the Veteran able to reach his fingers almost to his ankles. Lateral flexion and rotation were painless, while some pain was present with hyperextension. Heel-to-toe testing was unremarkable and the Veteran was able to squat easily. Lasegue (straight leg raising) was positive at 60 degrees but there was no atrophy of the muscles. The diagnosis was lumbosacral strain.

Based on the results of that October 1969 VA examination, the RO determined, in a November 1969 rating decision, that the Veteran's service-connected lumbosacral strain had improved and most nearly approximated the criteria associated for a lesser 10 percent evaluation under Diagnostic Code 5295. Under this diagnostic code lumbosacral strain was rated by comparison to Diagnostic Code 5294 for sacro-illiac injury and weakness. Sacro-illiac injury was rated as noncompensable with slight subjective symptoms only, 10-percent disabling with characteristic pain on motion, and 20-percent disabling with muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. A maximum 40 percent rating was assignable when there was severe disability, with listing of the whole spine to the opposite side, positive Goldthwaite's signs, marked limitation of forward bending in a standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, Diagnostic Codes 5294, 5295 (1969).

The November 1969 rating decision at issue indicated the reduction in rating would occur prospectively as of February 1, 1970.

The Veteran and his attorney have identified several purported instances of CUE in the November 1969 decision reducing the rating for the low back disability from 20 to 10 percent. They argue that the RO's reliance on the results of the October 1969 VA examination was CUE because the examination did not demonstrate improvement in the Veteran's low back disability; he contends that, to the contrary, it indicated a worsening of the condition. He also contends the reduction was not in accordance with the laws and regulations in effect in November 1969. Specifically, he argues the RO did not comply with the provisions of 38 C.F.R. §§ 3.327 and 3.344 pertaining to scheduling of reexaminations and the stabilization of disability evaluations. He also collaterally attacks the finality of the determination and argues that he never received actual notice of the reduction of his disability evaluation in the November 1969 rating decision and was not informed of his appellate rights. 

Despite the Veteran's contentions, the Board, after reviewing the record, finds the reduction in rating in the decision was not CUE. The Board finds that the RO considered the correct facts and properly applied the statutory and regulatory provisions for application at the time. The November 1969 rating decision does not contain an undebatable or egregious error that was outcome determinative.

The Veteran's contention that there was no evidence to warrant a reduction is essentially a mere disagreement with how the RO in 1969 weighed the evidence. The RO determined that the VA examiner's findings of slightly restricted flexion and pain with motion were consistent with an improvement in the low back disability and a lesser 10 percent evaluation under Diagnostic Code 5294 for characteristic pain on motion. The October 1969 VA examiner also noted that lateral bending and rotation of the spine were painless and the Veteran was able to walk and squat without limitation. X-rays of the lumbar spine also showed that curvature, alignment, and intervertebral spaces of the spine were all normal-a definite sign of improvement since contrastingly when the prior September 1964 VA examination had disclosed the Veteran required a back brace and had lordosis of his lower spine. The Veteran argues that the October 1969 finding of a positive Lasegue test at 60 degrees and his lay reports of losing five days of work a month due to his back disability establish that the RO erred in finding his disability had improved. However, these facts were before the RO at the time of the reduction. In addition, the Board notes that missing five days of work per month is less than that reported at the 1964 examination. In any event, the November 1969 rating decision was clearly based on the correct facts as they were known at the time and the Veteran's disagreement as to how the facts were weighed cannot constitute a valid claim of CUE. See Luallen v. Brown, 8 Vet. App. 92 (1995)(mere difference of opinion in the outcome of the adjudication or a disagreement as to how facts were weighed and evaluated does not provide a basis upon which to find that VA committed CUE during the adjudication process.) 

The Veteran contends that the 1969 examination was not as thorough and complete as the 1964 examination because the 1969 report did not indicate then present complaints; however, as noted above, the 1969 report did indicate present complaints in that it noted that forward bending causes pain in the lumbosacral area, and other movements (e.g., bending the head to the chin ) which cause pain. With regard to range of motion, as noted above, range of motion was described, albeit not with exact degrees. However, and importantly, it was noted that the Veteran was able to reach his fingers almost to his ankles and had painless lateral flexion and rotations, which the Board finds reasonably supports a finding that he did not have severe disability or loss of lateral spine motion, and reflects an improvement from the 1964 examination, where he had flexion to only 45 degrees. Moreover, if the Veteran had muscle spasms, it reasonably would have been annotated in the examination report. An examination report does not need to contain a list of the absence of findings (i.e. negative findings) in order to be adequate. As noted in the examination report (in the request for an x-ray), there were only "clinically minimal findings". The Veteran argues that the lack of exact degrees of range of motion make the examination report incomplete; however, exact degrees were not necessary for rating the spine in 1969, and exact degrees were not provided for every range of motion in 1964.

With regard to x-rays, the Veteran argues that because box 45 of the 1969 examination report was not annotated, it is not clear as to whether an x-ray examination was conducted. This argument is entirely without merit because the report contains the handwritten word "x ray", and at the time of the 1969 rating decision, included an October 1969 x-ray report (ordered the date of the Veteran's examination by the examiner, and completed prior to the final examination report) of the lumbosacral spine which noted normal curvature, normal alignment, normal interverbal height spaces, smooth surfaces, no destructive lesions, and no opaque substance in the spinal canal. In essence, the same provider who examined the Veteran, ordered an x-ray of the spine, and after the results of the x-ray, completed the examination report. 

The Veteran also contends that the 1969 examiner failed to do a neurological examination; however, this is an incorrect allegation. The 1969 examination report specifically notes that knee and ankle jerks were elicited; thus, the examiner did perform neurological testing. 

The Veteran also contends that the examination report is inadequate because the examiner alleged failed to discuss lateral spine motion; however, this is inaccurate. First, the Board notes that upon examination in 1964, the Veteran had no restriction to his lateral bending. The 1969 examination report reflects painless lateral flexion and rotation, which the RO could reasonably construe as a clinical finding that the Veteran had no restriction in motion. 

The Veteran contends that the RO failed to establish that the disability had improved under the ordinary conditions of life, and the RO erred by reducing his disability rating based on one examination as his disability is subject to temporary or episodic improvement. 38 C.F.R. § 3.344(a) (1969) provides that "it is essential that the entire record of examinations and the medical-industry history be reviewed to ascertain whether the recent examination is full and complete." Here, it is clear that the October 1969 VA examination was as full and complete as the prior August 1964 examination used to establish the initial 20 percent disability evaluation. Both examinations included a discussion of the history of the Veteran's condition and documented his complaints referable to the disability. Both examinations similarly addressed his complaints of pain, limitation of motion, and the presence of any structural or neurological deficits. The 1964 and 1969 examinations were also both accompanied by X-rays of the lumbosacral spine. The Board therefore finds that the October 1969 VA examination was as full and complete as the prior September 1964 examination.

With regard to whether there was evidence that improvement of his service-connected back disability would be maintained under the ordinary conditions of life in accordance with 38 C.F.R. § 3.344(a) (1969), the Board finds that there was such evidence. The recitation of evidence pertaining to limitation of motion of the spine, instances of painless motion, the Veteran's report as to when he feels pain, and the Veteran's ability to walk erect and without a limp pertain to the functional impairment associated with the disability. Evidence to demonstrate the improvement also included that the Veteran no longer had scoliosis or other abnormality upon x-ray and he had much greater flexion than he had in 1964. That being the case, the correct facts were considered by the RO. The amount of weight that the RO chose to give to this evidence cannot be the basis for a finding of CUE. The Veteran notes that the RO did not discuss the Veteran's 1965/1966 complaints as to needing a parking permit for his vehicle because taking the subway aggravated his back. However, as noted in more detail below, the RO was not required to summarize every piece of evidence of record. Moreover, the Veteran's application for a parking permit was three years prior to the 1969 decision and is not indicative as to the 1969 state of his disability. 

The Board is mindful that the RO did not specifically use the term "improvement will be maintained under the ordinary conditions of life", and did not specifically cite to the Veteran's time lost from work in the past 12 months in its decision; nonetheless, the Board finds that the RO did consider the pertinent facts, and did find that improvement would be maintained under the ordinary conditions of life. Not only did the RO list the examination report in its decision, but its specific notations as to some of the examinations findings make it clear that it had received and reviewed the examination report. The examination report reflects that the Veteran had been working consistently for the last five years and had, in the past 12 months, missed five days per month of employment due to his disability. Thus, in his ordinary conditions of life (which included steady employment), his back disability still allowed him to have sufficient range of motion such that he did not have muscular atrophy, was able to walk erect, did not limp, and could squat easily. 

The RO's 1969 decision reflects that the RO weighed the medical and lay evidence and determined that the improvement in his disability would be maintained under the ordinary conditions of life based on the functional factors and impairment demonstrated during the October 1969 VA examination. At the 1964 examination, the Veteran was noted to be wearing a brace at all times, yet there was no evidence he was wearing a brace in 1969. At the 1964 examination, the Veteran had pain with walking, bending or lifting anything, and flexion to 45 degrees. At the 1969 examination, his flexion was only "slightly restricted" and he was able to reach his fingers almost to his ankles. At the 1964 examination, there was evidence of scoliosis/lordosis, but there was no such evidence at the 1969 examination. Based on the foregoing, the RO could reasonably find that the improvement in the Veteran's disability would be maintained under the ordinary conditions of life. (i.e. working at the same occupation for the last five years.)

The fact that the RO's discussion did not include specific terms noted in 38 C.F.R. § 3.344 does not mean that it did not consider the requirements of this Federal Regulation. The RO's decision was in 1969. It was not until February 1990 that ROs were required to include in their decisions "a summary of the evidence considered". 38 U.S.C. § 5104(b); see Veterans' Benefits Amendments of 1989, Pub. L. No. 101-237, § 115, 103 Stat. 2062, 2066 (1989). As has been found by the Court, silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record. Eddy v. Brown, 9 Vet. App. 52, 58 (1996). 

Not only has the Court held that silence in a final RO decision cannot be taken as a failure to consider the evidence, but the Board notes, in support of its finding that the RO did not need to make an explicit statement, that 38 C.F.R. § 3.344(b) specifically lists language that will be added in doubtful cases, and does not prescribe any language to be used otherwise. Thus, it can be reasonably found that no such explicit language was required to be in a rating decision when the RO was not presented with a doubtful case.

The Board has considered the Veteran's argument that an explicit statement as to the ordinary conditions of life is required under Brown v. Brown, 5 Vet. App. 413 (1993), but finds the argument is unpersuasive. While Brown stands for the proposition that the Board must consider the full and complete examination of all medical records and history, it does not hold that an RO in 1969 must have explicitly made findings in its rating decision. Quite simply, the RO was not required at the time of the 1969 adjudication to make an explicit statement regarding the maintenance of lifetime improvement under ordinary conditions of life. Under the law, the RO was merely required to consider whether the Veteran's improvement would be maintained under the ordinary conditions of life. The Board finds, as discussed above, that the RO did consider such.

The Veteran also contends that the RO erred in reducing the disability rating assigned his low back disability through an improper application of the law. Under 38 C.F.R. § 3.327 (1969), if a disability is decreased so as to warrant a 10 percent or more decrease in the rating a reexamination will be scheduled in two years. 38 C.F.R. § 3.327(b)(ii)(b). The Veteran was not scheduled for a reexamination of his disability within the two-year regulatory period following the rating reduction. However, 38 C.F.R. § 3.327 also provides several exceptions to the requirement for reexamination, to include when there is pertinent evidence indicating that a disability is likely to improve materially in a shorter or longer period. 38 C.F.R. § 3.327(b)(iii). The November 1969 rating decision includes a reference to this exception, noting that no future examination was required under VA Regulation (VAR) 1327-the predecessor to 38 C.F.R. § 3.327. The rating decision does not specifically identify the evidence indicating the disability was likely to materially improve in a longer period than two years, but the Board cannot conclude that the evidence is undebatable that the Veteran's disability required reexamination. The October 1969 VA examination established improvement in lumbar range of motion when compared to the September 1964 examination five years earlier and the Veteran's functional impairment clearly lessened as well. The lumbosacral X-ray indicated there was no structural abnormality of the spine (including scoliosis or lordosis). The Veteran also did not report requiring any medical treatment for the condition. The RO clearly considered whether future reexamination was required through reference to VAR 1327, and the Board cannot conclude that failure to provide another VA examination in two years was CUE. 

Even assuming arguendo that the RO should have afforded the Veteran another examination, the Veteran has failed to provide sufficient evidence that had the Veteran been given another examination, it would have manifestly changed the 1969 RO decision. Importantly the reexamination requirement under 38 C.F.R. § 3.327 would have been scheduled for two years after the November 1969 rating decision, and one year after the expiration of the appeal period. Thus, it cannot form the basis for CUE in the 1969 decision. 

The Veteran's next argument with respect to 38 C.F.R. § 3.344 (1969) pertains to whether the condition is a disease subject to temporary or episodic improvement. According to this regulation, "[r]atings on account of diseases subject to temporary or episodic improvement...will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants a conclusion that sustained improvement has been demonstrated." 38 C.F.R. § 3.344 (a). The Board finds that the Veteran's lumbosacral sprain is not a "disease subject to temporary or episodic improvement" and the reduction of the assigned rating based on the single October 1969 examination was not CUE. The regulation provides several examples of diseases subject to temporary improvement including manic depressive or other psychotic reaction, epilepsy, heart disease, bronchial asthma, ulcers, and skin diseases. None of these examples are conditions that affect the spine, joints, or are otherwise similar to the service-connected lumbosacral strain. Additionally, the Veteran's lumbosacral strain is also clearly not a disease-it is an acquired disability of the spine that was developed as a result of injury, so prior trauma. While the disability can become aggravated or exacerbated due to certain physical activities, it is more or less static in nature. The Board finds that his service-connected back condition is not a disease subject to temporary or episodic improvement contemplated by the regulation, and that the reduction in the disability rating from 20 to 10 percent based on the single October 1969 examination was not CUE. 

Finally, the Veteran contends that he never received notice of the November 1969 rating decision's reduction of the disability evaluation assigned for his lumbosacral strain. He testified during his February 2015 hearing that he would have appealed the reduction of his rating if he in fact had received proper notice of his appellate rights. The Board notes that the Veteran's combined disability evaluation changed from 20 percent to 10 percent effective February 1, 1970; thus, as of that date, the Veteran's compensation benefits decreased, and he would have been aware of this decrease. In addition, a RO record (VA Form 21-6798) reflects that an award letter was completed and the Veteran's new address was noted. While the electronic claims file includes a copy of the November 1969 rating decision, it does not contain a copy of the notice that was mailed to the Veteran informing him of the reduction; however, that was standard VA practice at the time. The Veteran has not provided clear evidence to rebut the presumption of regularity. Moreover, the Board previously determined in a June 2004 decision that he was notified of that rating action, of his appellate rights, and that, as he did not initiate an appeal, that November 1969 rating decision became a final and binding determination. Therefore, this issue of law and fact already has been decided by the Board and is the law of this case.

Furthermore, and to reiterate, while VA statutes and regulations now provide that a rating decision does not become final and binding until written notification of the decision is issued to the claimant, this has not always been the case. See 38 U.S.C.A. § 5104(a); 38 C.F.R. §§ 3.103, 3.104(a), 19.25. See also Best v. Brown, 10 Vet. App. 322, 325 (1997) (for a VA decision to become final and binding on a Veteran, he or she must first receive written notification of the decision); see, as well, Tablazon v. Brown, 8 Vet. App. 359, 361 (1995), citing Hauck v. Brown, 6 Vet. App. 518 (1994) (where an appellant never received notification of a decision denying his or her claim, then the usual one-year limit for timely appealing the decision does not begin to accrue; instead it is tolled). Current laws also provide that the written notification generally must also explain the reasons and bases for the decision and apprise an appellant of his or her procedural and appellate rights, in the event the claimant disagrees with the decision and elects to appeal. 

However, to reiterate, a finding of CUE must be based on the record and law that existed at the time of the prior adjudication now being challenged, i.e., collaterally attacked. Damrel, supra. The statutory obligation to provide a statement of appellate rights to a claimant was created by the Veterans' Benefits Amendments of 1989, Pub. L. 101-237, § 115(a)(1), 103 Stat. 2062, 2065-66, and was codified in section 3004(a) of title 38 of the United States Code (now section 5104(a)). This provision was effective with respect to decisions rendered by VA after January 31, 1990. 103 Stat. 2066. See Mason v. Brown, 8 Vet. App. 44, 54 (1995); Rosler v. Derwinski, 1 Vet. App. 241, 249 (1991). Thus, prior to 1990, VA was not required to provide an appellant with a statement of appellate rights and any failure to provide such notification following the November 1969 rating decision does not render the adjudication nonbinding. Thus, the Board's June 2004 decision and the law in effect in 1969 establish that the November 1969 rating decision is final and binding and any failure to provide notice to the Veteran is not CUE. 

In sum, given the law in effect at the time of the November 1969 rating decision at issue in this appeal, there is no showing that the RO committed CUE in the reduction of the disability rating assigned the service-connected lumbosacral strain from 20 to 10 percent prospectively effective as of February 1, 1970. The correct facts were before the adjudicators, the law was correctly applied, and, importantly, there is no outcome-determinative error. Therefore, the allegation of CUE in that prior decision must fail.



ORDER

The March 2018 Board remand is vacated.

The claim of CUE in the November 1969 RO rating decision reducing the rating for lumbosacral strain from 20 percent to 10 percent effective as of February 1, 1970 is denied.



____________________________________________
KEITH W. ALLEN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs